BURLINGTON CARLYSLE, Guardian of DAVID G. CARLYSLE, *vs.* DAVID G. CARLYSLE.

If a guardian invests money belonging to his ward, *without first obtaining the approval and sanction of the orphans court,* and loss results from the investment, he will be held answerable therefor.

An order of the orphans court sanctioning such an investment, must not be merely a *verbal* order, but must be in *writing*, and it cannot be proved by *parol;* the orphans courts are so far *courts of record*, as that their orders or proceedings must not rest in *parol*, but must be reduced to *writing*.

APPEAL from the Orphans Court of Baltimore county.

The appellant filed a petition in the court below, alleging that in September 1853, he had in his hands $4650 of his ward's money, which he desired to invest in a mortgage upon real estate; *that* Jacob F. Kridler, then regarded as a respectable and thriving business man, applied to him for the loan of this sum, upon the security of a house and lot worth from $8.000 to $10.000, upon which was a prior mortgage of $2500, which Kridler agreed to have released; *that* deeming this security ample, he employed an attorney to investigate the title and obtain from the orphans court their approbation of the intended investment; *that* his attorney made the investigation, and informed him the title was clear, except the mortgage of $2500, and that the orphans court approved of the investment; *that* reposing confidence in this statement of his attorney, and hearing himself from the court that they sanctioned

the loan, and having no reason to suspect the integrity of Kridler, whose then standing in the community precluded any such suspicion, he advanced $1500 on the 4th of October 1853, taking, on the same day, a mortgage on the property for $4650, the balance being retained until Kridler obtained a release of the mortgage for $2500, which he did soon after; whereupon said balance was paid to him; *that* the mortgage was recorded the day it was executed, and he rested entirely satisfied with the security of the investment, until some time in the year 1854, when he saw the property advertised for sale, under a decree in equity, when; upon inquiry, it appeared that Kridler had, after the agreement for this loan, and after the aforesaid examination of the title, fraudulently procured an advance of $4000 from one Ireland, to whom he executed a mortgage of this property, dated the 19th of September 1853, upon which the decree aforesaid was passed; *that*, upon the sale, there was found but $2776.40, applicable to the mortgage debt of $4650 and interest. The petition further alleges, that in making this investment the petitioner did so fairly and in the execution of the duties of his office, and for the benefit of his ward, with the assent and sanction of the orphans court, and with the professional advice and assistance of his attorney, and under such circumstances he is advised, there is no principle of law or equity by which he should be held responsible for the loss which has occurred, notwithstanding his reasonable care and diligence in the premises, and prays that he may be allowed in his guardian's account, a credit for the difference between the sum so loaned and that received by him as aforesaid.

The appellee answered this petition, alleging his infancy, and putting the petitioner to the proof of the matters stated in his petition.

*Thomas Whelan, Jr.,* deposed, that he was employed by Mr. Carlysle, to investigate the title to the property in question, which he carefully did, and found it at the time of the examination all right, with the exception of a mortgage for $2500, and reported the result to Mr. Carlysle, who, with deponent, applied to the orphans court for permission to make

56   v 10

Carlysle vs. Carlysle.

the investment, which permission the court *verbally* granted, and the money was advanced by Mr. Carlysle, as stated in his petition; that Kridler, at this time, was in good standing and engaged largely in business; he cannot say on what day he made the examination, or how long a time intervened between it and the investment; thinks he made two examinations; that the application to the orphans court was *verbal*, and their order of approval was also *verbal*.

*Joshua H. Hynes*, who was at the time chief judge of the orphans court, deposed, that Mr. Carlysle with his counsel Mr. Whelan, appeared before the court, when the latter stated that Mr. Carlysle desired to invest the money, under the direction of the court, upon the security of the property in question; that he had examined the title, and it was good; whereupon the court told him they would approve of the investment, and to go on and make it and report to the court what he had done; deponent does not know whether the court at that time had any practice in reference to the approval of investments, but afterwards they adopted a rule, to reduce to writing their approval of such investments; he does not know whether a report of this investment was made as required by the court; deponent's idea was, that Mr. Carlysle would make the investment, and report in writing to the court, when an order would be passed approving of it; the court did not, as far as deponent can remember, ever call the register's attention to it, as they considered the application preliminary; deponent said no more to him than, to go on and make the investment and report it; and Mr. Carlysle said he would make a report; if deponent had thought the action of the court was final, he would have called the register's attention to it, and had a minute of it made upon the proceedings of the court.

The defendant excepted to the *oral testimony* above taken, as inadmissible, because the *records* of the orphans court alone, are evidence of all proceedings in regard to the petitioner's guardianship.

The depositions of several conveyancers were also taken, in regard to the practice of examining titles in such cases, some stating the practice to be, to make the examination up to the

day the loan is made, and when an interval elapses between the first examination and the loan, to re-examine up to the date of closing the transaction; other, that it is not the practice to re-examine in cases where the parties are respectable, and of ordinarily good character.

The court passed an order directing the guardian to be charged with the loss, from which he appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Grafton L. Dulany* for the appellant.

Under the circumstances of this case, it would be contrary to every principle of law and equity, to charge the guardian with this loss. There is no fact in the case which casts the slightest suspicion upon his motives; he was not benefitted in the slightest degree by the transaction, and in making the investment he was but doing his duty, 1 *G. & J.*, 1, *Pawson vs. Donnell..* The negligence or fault, if there was any, of the attorney, whom it was his duty to employ, should not be visited upon the guardian. But there was no negligence whatever; both the guardian and attorney acted in good faith and with due diligence, and when so acting, a guardian cannot be held responsible for loss. 2 *Story's Eq.*, secs. 1268, 1269. 8 *G. & J.*, 218, *Jenkins vs. Walter.* The law throws upon the guardian the duty to exercise *due care and diligence* only. It enters into no comparisons of degrees of guilt or innocence, otherwise no one could be found who would be willing to take upon himself such a trust. It is supposed that a previous order of the orphans court is essential to protect the guardian in such a case, and reference is made to the acts of 1831, ch. 315, sec. 5, and 1843, ch. 304, sec. 4, to sustain this position. But it is submitted, that the first of these acts does not deprive the guardian of any privilege which he had by the common law, in case the orphans court should not act under this law. It authorises the court to *direct* the investment to be made, but does not say the guardian may not do it *without such direction*. The latter act simply forbids a *sale* of the ward's property

Carlysle *vs.* Carlysle.

without an order of the court, but has no reference to an *investment* of money, belonging to the ward. But suppose such an order was necessary, we say it was given in this case. The evidence shows that the court directed this investment to be made; that they approved and sanctioned it. But it is said, we cannot prove this by *parol.* This objection is not tenable, for the orphans courts are not courts of *record.* 2 *H. & G.,* 120, *Brodess vs. Thompson.* When it appears that any of the proceedings of these courts have not been reduced to writing, they may be established by parol proof. This must be so, especially when it is shown, as in this case, that the court was not in the habit of reducing such proceedings to writing. But at all events there can be no doubt, that the order would have been passed if applied for in due form, and we therefore invoke, for our protection, the well recognised principle, that the court will regard that as done, which upon application it would have ordered to be done. 5 *G. & J.,* 1, *Lee & Wife, vs. Stone.*

*John T. Morris* for the appellee, argued:

1st. That the parol evidence objected to was inadmissible, to prove the authority of the orphans court to make the loan in question, and that such authority can only be proved by the production of the official order, or copy from the records of the court. 1st. Parol evidence is inadmissible, to prove the orders, decrees or proceedings of courts of record, or to vary, explain or contradict the record. 1 *Greenlf. on Ev.,* sec. 513. 3 *Hammond,* 554, *Ludlow vs. Johnston.* 5 *Do.,* 447, *Newcomb vs. Smith.* 5 *Pick.,* 490, *Hathaway vs. Clark.* 2nd. The orphans courts in Maryland, are courts of record, and their orders and proceedings must be proved in the same manner as proceedings of other courts of record. Act of 1798, ch. 101, sub-ch. 15, secs. 9, 12. 3 *Bl. Com.,* 1 to 24. 2 *Blackf.,* 344, *Allen vs. Clark.* 3 *New Hamp.,* 309, *Judge of Probate vs. Briggs.* 3 *Ohio Rep.,* 553, *Ludlow vs. Johnston.* 14 *Mass.,* 222, *Chase vs. Hathaway.*

2nd. If this evidence is admissible, it does not prove such authority to consummate the loan, as would discharge the

guardian from responsibility for loss. 1st. The order was merely *preliminary* and not *final*, as the guardian was required to report the matters again to the court for approval, by the terms of the alleged order, which he neglected to do. 2nd. The order was *conditional*, that the investment would be approved if the title was *good*. The title was incumbered and defective, and the alleged order was thereby rescinded.

3rd. That if the formal order had been passed by the court, on the application of the guardian, authorising him to make the loan in question, that would not justify him in omitting fully to examine the title of the property on which the loan was to be made, and if loss occurred because of this omission, he is responsible notwithstanding the order.

4th. That if the guardian had made the alleged loan, in the name and for the use of his ward, and in good faith had exercised usual and ordinary diligence and care in making the investment, but *without an order of the orphans court*, in case of any loss accruing on account of that loan, the guardian would be responsible, and the rights of the infant would not be affected by the transaction. That such an order is essential to the guardian's protection, is apparent from the provisions of the various acts of Assembly upon the subject, and especially by those of 1831, ch. 315, sec. 5, and 1843, ch. 304, sec. 1, See also 4 *Md. Rep.*, 353, *Mayor & C. C. of Balto.*, *vs. Norman.* 2 *Md. Ch. Dec.*, 418, *Murray vs. Feinour.*

ECCLESTON, J., delivered the opinion of this court.

The present case is designed to settle the question, whether the loss resulting from the loan to Kridler, by B. Carlisle, the guardian of D. Carlisle, shall fall upon the guardian or on his ward? The decision below was in favor of the ward, throwing the loss on the guardian.

It will be proper, in the first place, to notice certain acts of Assembly having an important bearing upon the matter in controversy.

The act of 1816, ch. 154, which relates to sales of the real estate of minors, by the 5th section, directs the proceeds of such sales to be paid over by the trustees to the guardians,

and by them to be "vested in such public stock, or other permanent funds, as will, at least, net six per centum per annum, at the time of the purchase, and as the orphans court of the county, by whom such guardian or guardians shall have been appointed, shall direct."

And the 7th section enacts: "That all moneys vested by and in virtue of this law, shall be vested in the name of such infant or infants, and shall be transferable only by virtue of an order of the orphans court aforesaid, and all transfers, without such order, are hereby declared void to all intents and purposes."

By the 2nd section of the act of 1816, ch. 203, it is provided: "That the orphans courts shall have authority to empower any guardian to sell any leasehold estate belonging to his ward, if the court shall think such sale advantageous to such minor, and shall order the proceeds of such sale, or *any surplus money* belonging to said minor or orphan, to be invested in bank stock, or any other good security, which investment shall be made in the name of the minor or orphan, and that no sale, transfer or disposal of the stock of such minor or orphan, shall be made without the concurrence of the orphans court."

The provisions of the act of 1816, ch. 154, respecting the sales of real estate of minors, are extended to personal estate of such minors, by the act of 1819, ch. 144, section 2.

By the 5th section of the act of 1831, ch. 315, the orphans courts are authorized, in their discretion, and whenever to them it shall seem proper, to order "any guardian whom they may have appointed, or whose bond they may have approved of, if it be a natural or testamentary guardian, to bring into court, or place in bank, or invest in bank or other incorporated stock, or in other good security, any money or funds received by such guardian, and the court shall direct the manner and form in which such money or funds shall be placed in bank, or invested as aforesaid, and the same shall, at all times, be subject to the order and control of such court."

The act of 1843, ch. 304, sec. 1, provides, that it shall not be lawful for any guardian "to sell any property" of his ward,

without an order of the orphans court "first had and obtained, authorising such sale or removal, and any sale made without an order of court previously had," is made void.

These laws manifest a clear intention, on the part of the Legislature, to protect the property of a ward against the mismanagement of his guardian, by placing not only the sale of property, but also the disposition or investment of money, under the control and direction of the orphans court. And these provisions afford the guardian ample and convenient means of securing himself from loss. If, therefore, he thinks proper to disregard them, and chooses to assume the responsibility of investing the money without the sanction of the court, he should be held answerable for any loss which may result from such an imprudent course.

The principle thus announced renders it necessary to inquire, whether the appellant made the loan complained of by the appellee, under the authority or order of the orphans court?

It is alleged, by the appellant, he had authority from the court to make the loan; admitting, however, that the authority was not in writing but merely verbal. And, in fact, the proof offered to sustain the allegation is nothing more than parol evidence, which proof shows there was no written order passed on the subject, that no direction was given to the register to make any entry of it upon the minutes or proceedings of the court, and that no such entry ever was made.

The appellee insists that this parol evidence is inadmissible for the purpose for which it has been introduced; and, consequently, there is no proof showing that the court ever authorized or sanctioned the loan. The appellant denies this, insisting that the orphans court is not a court of record, and when it appears any of its proceedings have not been reduced to writing, they may be established by parol proof. This, he says, must be so, especially when (as in this case) it is shown the court were not in the habit of reducing such things to writing.

The adoption of the appellant's doctrine, in such a case as this, would establish a most dangerous principle. Under such

Carlysle *vs.* Carlysle.

a rule, unsafe, indeed, would be the rights of persons, in regard to property, when those rights have been acted upon by these very important courts. We call them important, because, the swift messenger of death is annually bringing within their jurisdiction large amounts of personal property.

We have seen no authority, and can perceive no good reason, for admitting, that the orders of these courts may be merely verbal, and may be proved without any written evidence. Such a doctrine we consider at variance with the law creating and regulating the courts, contrary to the authorities in reference to courts of similar character, and contrary to sound legal principles.

The law providing for the organization of our orphans courts, certainly makes them so far courts of record as to require, that their proceedings shall not rest in parol, but shall be reduced to writing; and for the purpose of having proper entries made of them, and certified copies given, under seal, when demanded, a clerk has been provided.

The act of 1798, ch. 101, sub-ch. 15, section 9, requires the register of wills diligently to attend each meeting of the orphans court, and *under their direction*, to make *full and fair entries of their proceedings;* to make a fair record in a strong bound book or books, of all wills proved before him, or the said court, or authenticated according to the act, and of *all other matters by law directed to be recorded in the said court,* or in his office; to make out and issue every summons, process or *order* of the court; that he shall, in every respect, act under their control and direction, as the clerk of a court of law is under the direction of a court of law; that he shall *give out and certify, under the seal of the court, any copy of any part of the proceedings in the court,* or in his office, which any person may demand.

Now, with such provisions in regard to the proceedings of the orphans court, what propriety or necessity can there be for holding that their orders or proceedings may be merely verbal, and evidenced, or established in any subsequent suit or controversy by parol proof only? We cannot recognize a doctrine which assumes the propriety or necessity for so doing.

Carlysle vs. Carlysle.

The case of *Chase vs. Hathaway*, 14 *Mass. Rep.*, 222, involved an inquiry, whether a decree deciding Chase to be incapable of taking care of himself, was valid or not? The ground on which the court held the decree to be invalid was, that Chase had no notice of the proceedings either before the select men who made the inquisition, or in the probate court, in which the decree was passed. We have referred to this case for the purpose of quoting, as applicable to the subject before us, the following language of Chief Justice Parker: "A court of probate, although not technically a court of record, ought to have a perfect record of all its orders and decrees; and it was for this purpose principally, that the constitution established the office of register. Orders of notice, among other things, should be recorded, or if not, should be filed, with the return upon them."

In *Weatherhead's Lessee vs. Baskerville, et al.*, 11 *How. S. C. Rep.*, 360, the Supreme court say: "By the law of Tennessee, such a partition is a judicial act and becomes a record. It can only be proved as such records may be. . . . . . The rule in respect to judicial records is, that, before inferior evidence can be received of their contents, their existence and loss must be clearly accounted for. It must be shown that there was such a record, that it has been lost or destroyed, or is otherwise incapable of being produced; or that its mutilation from time or accident, has made it illegible. . . . . . The burning of an office and of its records is no proof that a particular record had ever existed. It only lays the foundation for the inferior evidence. If that cannot be got, the result must be, and is, that there has been an allegation of the existence of a record, without proof."

Whether a certain order might be proved by parol, was made a question in the case of the *Heirs of Ludlow vs. C. & J. Johnston*, 3 *Ohio Rep.*, 577. There the Supreme court of the State say: "The court of Common Pleas, whether acting as a court possessing common law jurisdiction, or as a court of probate, is a court of record. The proceedings, orders, judgments, decrees of such courts, do not rest in parol. It is by their records they speak--and there is but one mode,

Carlysle vs. Carlysle.

as a general rule, known to the law, by which their acts can be proved, and this is by the record itself. True, there are cases, where, after the loss or destruction of a record, you may prove its contents. In such case all has been done by the court which could be done—a record, which is the legal evidence to prove its acts, has been made. The rights of all parties concerned are fixed, and those rights ought not to be affected by time or accident. But before the contents of a record can be proved, it must be shown that it once existed and has been lost by time or accident. This shows that the evidence is not introduced to prove the proceedings of a court as resting in parol, but as they once existed of record. But to introduce parol testimony to prove the proceedings of a court of record, and then substitute this testimony for the record itself, would be a novel proceeding. It would be equally absurd as to sustain an action of debt upon bond, upon proof that the defendant promised to make such an instrument as is set forth in the declaration, although the fact should be admitted, that the instrument was never executed."

The appellant in the present case relies upon parol evidence, only, for the purpose of proving that he was authorized by the court to make the loan in controversy, which authority was not in writing, nor was any entry of it directed to be made by the register, and in fact it never was entered or recorded by him, among the proceedings of the court. Under these circumstances we must treat the case as if no such authority or order ever had existence; and, of course, as if the guardian made the loan without the sanction of the court. The result of which is, the appellant should be held responsible for the loss. And the court below having so decided, the order appealed from will be affirmed without costs in this court.

*Order affirmed.*