# MATTHEW McELHENY
*v.*
## SARAH E. MUSICK.

## SAME
*v.*
## JAMES MUSICK.

1. GUARDIAN—*liability of.* When a guardian, with a view of preserving an estate unimpaired until the heirs become of age, leases for a less sum than could be obtained from ordinary yearly rents, first securing the approval of the probate court, and acts in manifest good faith, he is not liable for having failed to secure the higher rent.

2. SAME—*error of judgment.* A rule which would subject a guardian to a sort of fine for a mere error of judgment, is inapplicable to the character of the office.

APPEAL from the Circuit Court of Logan county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Two cases are involved in the opinion, in which both are stated.

Messrs. Bᴇᴀꜱᴏɴ & Bʟɪɴɴ, for the appellant.

Mr. Eᴅᴡᴀʀᴅ Lʏɴᴄʜ, and Messrs. Rᴏᴡᴇʟʟ & Hᴀᴍɪʟᴛᴏɴ, for the appellees.

Mr. Cʜɪᴇꜰ Jᴜꜱᴛɪᴄᴇ Lᴀᴡʀᴇɴᴄᴇ delivered the opinion of Court:

This was a bill in chancery, brought by the children of James Musick against their guardian, for the purpose of compelling him to account for the rental value of a farm inherited by them from their father. The court rendered a decree for $350 in favor of each of the two children.

The complaint is not that the defendant has not faithfully accounted for all the rents collected by him, but that he leased the farm for less rent than he ought to have demanded and might have obtained.

James Musick, the father, died in 1853. His widow married one John Thomas, in 1856. The first guardian was Henry Musick, who leased the land to Thomas, in 1856, for nine years. This lease did not provide for repairs by the tenant. Henry Musick ceased to be guardian in 1858, and the appellant was then appointed.

The consideration of the first lease was that Thomas was to maintain the children. Their mother died in 1861, and their grandmother wishing to take charge of them, the old lease was cancelled, by consent, and the appellant gave to Thomas a new one, to run nine years, when the eldest child would become of age. Thomas covenanted to keep the premises in repair, to pay all taxes, to keep the buildings insured, to set out and cultivate an orchard of 100 apple trees, to fence such parts as were not fenced, and to pay $50 per annum. Under this lease, he was to raise on the land only small grain and grass; but in May, 1866, he desired to cultivate 60 acres of meadow in corn, and a supplemental lease was made, by which he was to pay an additional rent of $150 per annum. The

farm contained 160 acres, of which 60 acres were wet, and liable to overflow. Thomas sub-let the south 80 acres for $1 per acre.

As might be expected in a case of this character, the testimony is very contradictory as to what the rent of this land should have been from 1861 to 1870, but there is not a particle of evidence tending to show that the guardian did not act in the most perfect good faith, and in accordance with what he deemed the best interests of the children. The county judge testifies that the guardian consulted him before making the lease, and he himself visited the land twice for the purpose of examination, and told the guardian he would approve the lease, and the record of the court was produced, showing its approval. This witness further testifies that he has had much experience, and that the farms of minors are often allowed to run down for the sake of getting a little more rent, and his intention in this case was that the premises should be kept in good condition. He testifies that he still thinks the lease was the best that could have been made for the heirs, and various witnesses of experience swear to the same opinion.

It further appears, and indeed is admitted by counsel for appellee, that Thomas was an excellent farmer, and kept the farm in superior condition, and that it was in such condition when he surrendered the possession. It is further proved by experienced farmers that it is far better to rent for a long term to such a tenant, at a very low rent, than to rent at a much higher price from year to year to ordinary tenants, and that the injury to the premises, in the hands of a poor tenant, is often much greater than the whole amount of the rent.

These facts were legitimate considerations on the part of the guardian when he executed this lease, and although it may be conceded, as proven, that a larger amount of money could have been obtained as rent, it is very doubtful, from the evidence, whether the process of obtaining it would not have been, in the end, an injury to the wards' estate. Under such circumstances, we do not deem it proper that a decree should be

rendered against a guardian for an act which, in its worst aspect, was only an honest error of judgment, and which is by no means clearly proven to have been even that. If guardians are to be made liable to what is very much like a fine for a mere error of judgment in the management of the estate, the error being that by pursuing some more hazardous method they might have made a greater income, no man at once prudent and responsible would be willing to assume the trust. Such a rule is wholly inapplicable to the character of the office. For malfeasance in their trust—for failing faithfully to account for the estate that has come to their hands—they should be held to a rigid responsibility, but it should not be made the basis of a decree against them that, acting in the highest good faith and with the approval of the proper court, they lease to an excellent and responsible tenant for a long term at a less rent in money than might be obtained, from year to year, from tenants less desirable, if by such course they keep in excellent condition a property greatly liable to deterioration. This guardian swears, and we have no doubt honestly, that if ever he did anything in good faith, it was in acting for these children, and that his object was to turn over the farm to them, on their arriving at age, in better condition than when it came into his hands.

We are of opinion the evidence does not show sufficient ground for the decree.

The decree is reversed and the cause remanded.

*Decree reversed.*