## WILLIAM E. HUGHES ET AL.
## v.
## THE PEOPLE, use, etc.

1. GUARDIAN AND WARD—INVESTMENT OF WARD'S MONEY.—A guardian is not liable for an error in judgment in making investments of his ward's money, where he acts in good faith, and is reasonably prudent under the circumstances; and he is not bound to exercise the highest degree of care.

Hughes v. The People.

2. APPROVAL OF LOAN BY THE COURT.—It is not necessary that a guardian should have the approval of the county court in making a loan of the ward's money. But where a loan is made by a guardian without the previous approval of the court, and a loss ensues, the guardian will be held to show clearly and beyond a reasonable doubt, that the loss did not occur on account of the want of good business judgment in taking the security.

APPEAL from the Circuit Court of Livingston county; the Hon. FRANKLIN BLADES, Judge, presiding. Opinion filed February 24, 1882.

Messrs. STEVENSON & EWING, Mr. WM. E. HUGHES, and MR. W. B. CARLOCK, for appellants; that the guardian is a trustee and the general principles relating to trustees apply to him, cited 2 Kent's Com. 230; Newman v. Reed, 50 Ala. 297; Gould v. Hayes, 19 Ala. 438; Henderson v. Summons, 33 Ala. 438; Ivey v. Coleman, 42 Ala. 409.

A guardian is not liable for an error of judgment in making investments, where he acts in good faith: Lowell v. Menott, 20 Pick. 116; Covington v. Leak, 65 N. C. 594; State v. Munson, 68 N. C. 162; Love v. Logan, 69 N. C. 70; Newman v. Reed, 50 Ala. 297; Christy v. McBride, 1 Scam. 75.

The guardian may change personal property into realty or realty into personal property without making himself responsible: Bonsall's Case, 1 Rawle, 266; Gelbach's App. 8 Serg. & R. 205; Boggs v. Adger, 4 Rich. 408; Lowell v. Menott, 20 Pick. 116; State v. Munson, 68 N. C. 162.

Previous approval by the court of an act of the guardian is not necessary: Gay v. Lynch, 8 Gill. 403; Janett v. Andrews, 7 Bush. 311.

Messrs. WELDON & McNULTA, for appellee; that if a guardian invests money of his ward without previous approval of the court, he is responsible if a loss occurs cited, Carlyle v. Carlyle, 10 Md. 440.

There was no error in charging compound interest: Gilbert v. Guptill, 34 Ill. 112; Bond v. Lockwood, 33 Ill. 212.

LACEY, J. At the June term, A. D. 1874, Wm. E. Hughes, one of the appellants, was, by the County Court of McLean county

appointed guardian of Ellen Murray, a minor, giving his guardians bond in the penal sum of $17,000 in the usual form, with the other appellants as his sureties.

There came to his hands as such guardian as shown by his inventory filed the same day of his appointment, July 16, 1874, the sum of $5,964,03 cash, received from Stephenson & Ewing, attorneys, being the net proceeds of a judgment she had recovered against the Chicago and Alton R. R. Co. for personal injuries. The suit is brought on the guardian's bond for the purpose of recovering portions of that money which it is alleged the appellant Hughes, as such guardian, lost by carelessly loaning without the order of the county court, and that he converted the money to his own use, and failed to pay it over to T. C. Kerrick, the succeeding guardian. The suit was commenced in the McLean county Circuit Court, and carried by change of venue to Livingston county where a jury was waived, and the cause was tried by the court without a jury, and resulted in a judgment against appellants for $17.000 debt and $3,284,67 damages, debt to be discharged on the payment of damages. From the judgment this appeal is taken.

The main controversy appears to be in regard to two loans made by the appellant guardian in the summer of 1874, one for $1,000 made to one Moore, secured by a mortgage on a lot and building in the town of Chenoa, McLean Co., the lower portion of which building was occupied as a billiard hall and saloon, and the upper portion as a residence of Moore and family, and the other for $500, made to one Lavin, secured by a mortgage on a house and lot in the city of Bloomington.

The borrowers themselves were not, at the time of the respective loans, or either of them, solvent and not good security for the amount loaned. If the property in either case was good security at the time of the loan for the amount loaned upon it, both pieces afterwards depreciated in value on account of the fall in the price of real estate of this description in the market, and especially of the two pieces in question, so that in August 1878, when Hughes, the guardian, sought to turn over the certificate of purchase on the Chenoa property, for he had foreclosed the mortgage and sold the property for debt, in-

Hughes v. The People.

terest and costs for $1.277.52, May, 8, 1877, the amount due in August, 1878, being $1,437.52, the real estate was not worth half the amount due on it, and the same was substantially the case with the Lavin lot, on which, in August, 1878, there was $572.58 due. Each of these loans was made by the appellant guardian on his own judgment, and without the approval of the county court.

The succeeding guardian refused to receive either of these loans, but demanded that his predecessor, the appellant, should account to him for the money which was put into the loans. All the other money coming to the hands of Hughes has been accounted for and paid over in one way and another, and is not in controversy as we gather it from the record. The statute which it is contended the appellant guardian violated, and the violation of which renders him liable, is Sec. 22, Chap. 64, and is as follows: " It shall be the duty of the guardian to put and keep his ward's money at interest, upon security to be approved by the court, or invest the same in United States bonds, or United States interest-bearing securities. Personal security may be taken for loans not exceeding $100. Loans in large amounts shall be upon real estate security. No loan shall be for a longer time than three years, nor beyond the minority of the ward, provided the same may be extended from year to year without the approval of the court. The guardian shall be chargeable with interest upon any money which he shall wrongfully or negligently allow to remain in his hands uninvested after the same might have been invested." It is contended on the part of the appellants that this statute is merely directory, and that the guardian need not obey it. That the guardian, notwithstanding the statute, is only required to use ordinary care, prudence and judgment in making loans and taking mortgage security, such as a careful, prudent man would in transacting his own business. That he only occupies the position of trustee, and the general principles relating to trustees are applicable to him. 2 Kent's Cases, 230, 231 and notes; Newman v. Reed, 50 Ala. 297.

That a guardian is not liable for an error in judgment in making investments where he acts in good faith and is reason-

ably prudent under the circumstances, and is not bound to exercise the highest degree of care, citing Lowell v. Menott, 20 Pickering, 116; Covington et al. v. Leak & Wall, 65 N. C. 594; State ex rel. v. Munson, 68 N. C. 162; Love v. Logan, 69 N. C. 70. On the other hand it is contended by appellee that if the guardian fails or neglects to get the approval of the court, he takes all the risks, and that the investments so made are his individual investments, and if loss results from such investments he is held responsible, and that the order of approval must not be verbal but must be in writing, and must become a record of court, citing Carlyle v. Carlyle, 10 Md. 440. This question is an important one, and if decided adversely to appellants, might render them liable without reference to the guardian's good faith or prudence in making the loans in question. We think the general doctrine contended for by the appellants is the correct one, and have so decided in the case of Holeman v. Blue, at the present term of this court, (Ante, page 130); but the important question here is, whether the statute has changed the rule. We can not know whether the court below erred in its ruling on the law for the reason that no legal propositions were submitted to it for its decision.

The court may have found from the evidence that the appellant guardian did not exercise the ordinary prudence in making the loans and taking the securities that an ordinary careful business man would have done, and upon this subject the evidence was somewhat conflicting; but upon which side the preponderance lay we desire to express no opinion, as the case will have to be retried. If the court found against the appellant Hughes on this point, then it was proper to reject the Moore and Lavin claims as assets of the guardianship, and to hold the appellant liable to pay the amount of the loans and interest in money. Further along in the opinion we will consider the question of the guardian's duty under the statute, but at present will consider the question as to the justness of the finding of the court on the basis that all the questions of fact were found against appellants. Admitting that appellant Hughes was negligent and disregarded his duty as a guardian in making the loans, and holding him liable as upon a conversion of

the money to his own use, and holding him to account for every thing he actually received on the two loans in question, what would be the measure of the damages that should be assessed against him on that account? Under the rule laid down in *In re* William Steele et al., guardian, etc. 65 Ill. 322, Bond v. Lockwood, 33 Ill. 212, and Gilbert v. Guptill, 34 Ill. 112, it would be the sum so converted and six per cent. compound interest, allowing appellant six months without interest for time in which to make his investment. Thus the sum of $1,000 representing the Moore loan put at six per cent. compound interest, commencing Jan. 16, 1875, until March 31st, 1881, the date of the judgment, would be $1,436.12.

And the sum of $500 with $125 added for interest on the Lavin loan collected prior to and up to July 15, 1877, making $625, computed at compound six per cent. interest from the later date, would make the sum of $775.01. But Hughes, appellant, made four reports where he charged himself with ten per cent. semi-annual interest on the whole sum received, including the $1,500, which we have charged him with above with six per cent. compound interest.

Appellant charged himself with semi-annual ten per cent. interest compounded, until Jan. 16, 1876, and annual compound interest from that time, in same manner and same rate till Jan. 16, 1878, and ten per cent. interest on the balance reported in his hands Jan. 16, 1878, to Aug. 28, 1878, the time he made his final report. The different reports were approved by the court, except probably the last, which appears to be correct, no fault being found with it.

In these accounts it will be seen that two hundred dollars was dropped from the interest charge, on account of the failure to collect on the Moore loan, being two years' interest.

Now that we have charged Hughes with this $1,500 in another manner, we must take it from the debit accounts in these different reports, in the same manner that it has been charged.

In doing so we find the sums of $738.15 and $119.48, should be deducted from the final debit in the report of Aug. 28, 1878, as being what entered into that debit on account of the $1,500 above referred to. When this sum of $1,929.58, is taken from the debit account, and the other credits contained

in that report, and about which there is no dispute, we have a total credit account of $5,950.50, which, taken from the debit of $6,582.76, leaves a balance to be charged to appellant of $622.36, the interest on which at six per cent. compounded from Aug. 28, 1878 to March 31, 1881, is $102.69, and makes the sum of $725.05, leaving a total with which the appellants should be charged of $2,936.18, instead of the damages found by the court below, $3,284.67, being an excess of $348.49 against appellants.

The following is a full statement of the account and some of the calculations, viz.:

| | |
|---|---:|
| Aug. 28, 1878, Hughes' debt acct.................. | $6,572.86 |
| By amt. of Lavin note and interest in the manner compounded by Hughes in his various accts., to Aug. 28, '78............................... | 738.05 |
| By amt. of the Moore loans charged by Hughes against him (except int. on $1,000 taken out for two years, seven months and ten days, $191.48), to Aug. 28, '78............................... | 1,929.53 |

*Contra:*

| | |
|---|---:|
| By cash paid March 11, '78..................... | $ 100.00 |
| Int. on same.................................. | 4.63 |
| By paid Murray................................ | 25.00 |
| By interest................................... | .70 |
| By Matthews mort. (paid in)................... | 1,140.50 |
| By Ferguson note, paid in..................... | 1,044.17 |
| By Dunkle note, paid in....................... | 708.87 |
| By John Murray, paid in....................... | 840.11 |
| By cash in hand.............................. | 165.54 |
| | $5,950.50 |

| | |
|---|---:|
| Total balance due after taking out the original sum of $1,500................................ | $ 622.36 |
| To interest on last amount, $622.36, compounded at six per cent. from August 28, 1878, the date of the report, to March 31, 1881, the date of judgment.. | 102.69 |
| Total...................................... | $ 725.05 |

To amt. due on the $1,000, but more at 6 per cent. compound interest from Jan. 16, '75...............$1,476.12

To amt. due loaned Lavin on $625, from July 15, '77, to March 31, '81................................ 775.01

Total amount due.........................$2,936.18

Calculation of amt. to be deducted from final debit in report of Aug. 28, '78:

Interest on $500 from Aug. 10, '74, to Jan. 16, '75..$ 521.50

Interest on $521.50 to July, '75................... 547.60

Interest on $547.60 to January, '76.............. 574.88

Interest on $574.88 to January, '77.............. 632.36

$632.36 to January, '78.............. 695.59

.................................. 778.05

To amt. of int. on $1,000, and on same time and same interest (except the int. on $1,000, $738.05, was not counted from Jan. 16, '76.)..................... 1,191.48

$1,929.53

The above may not be a perfectly accurate calculation. We give these figures in order to illustrate and explain the rule which we adopt in fixing appellant's liability in case recovery is had.

It can not be allowed to charge appellants as claimed by appellees on the same basis as though the loans to Moore and Lavin were good, for if their theory be correct, that the loans would never have been made if the court had been consulted, and this alone can be the basis of the recovery, they can not with justice, claim any benefit from the loans. The loans must be repudiated in order to recover at all; hence the amount of the bad loans with ten per cent. interest, according to their terms, is not a proper basis of recovery.

The question of the liability of the guardian in case he makes a loan not having the approval of the county court, and the loan turns out to be a bad one, has been much discussed by the attorneys on each side, and it being an important matter on a new trial of the case we deem it proper to notice it.

The question, so far as we have been able to discover, has never been passed upon by the Supreme Court.

It has been held by the Supreme Court, by implication at least, that in renting the real estate of his ward by the guardian, the approval of the county court would not be a protection to him in case he acted without due care in making the lease, and leased the land at too low a rate, the tenant, terms and all things considered. McElheny v. Musick, 63 Ill. 328. But in this case the guardian had the approval of the county court, and acted with reasonable judgment and with due care.

In Gilbert v. Guptill, 24 Ill. 140, the Supreme Court decide that to leave money in a man's hands without security and not on interest, is on the part of the guardian a gross disregard of duty and of the statute; and if it is lost, the loss is directly traceable to such neglect to follow the statute and of duty, and he will be personally liable. Sec. 22 of the statute above quoted, requires the guardian to keep the money at interest "upon security, to be approved by the court," etc. etc., "provided the loan may be extended from year to year without the approval of the court." What was the object of this statute? It was that the guardian should have the benefit of the judgment of the court in regard to the sufficiency of the security, and thereby rendering the danger of loss less, arising from insufficient security. But we think the statute so far directory, that a loan made and security accepted by the guardian without the approval of the county court, would be a valid loan at least until disapproved by the court.

By the 23d section of the statute it is provided "that the guardian may lease the real estate of the ward upon such terms and for such length of time, not exceeding beyond the minority of the ward, as the county court shall approve."

"All that can be reasonably claimed under this statute," the court say, "is that a lease made by a guardian, may, when it is submitted to a probate court, be rejected and set aside by the court. Such a lease is not however void, but voidable merely; it may be regarded as binding until the court should examine it and refuse its approval." Field et al. v. Herrick et al. 101 Ill. 110. The approval of the court is no more required in the one case than in the other. The most that can be said is, that the guardian has proceeded to execute the provisions of the stat-

Hughes v. The People.

ute irregularly, without making use of all of the safeguards that he might have done. The main responsibility at last rests upon the guardian. Even with the approval of the county court, he must exercise ordinary care and caution. In case of negligence and consequent loss on his part, arising from not taking sufficient security, he could not shield himself behind the authority of the approval of the court. Both the guardian and the court might approve the security and the loan might be valid, and yet his negligence might render him liable for loss arising therefrom. The sufficiency of security is not a judicial question for the court to decide, but it is a mere matter of business judgment to be exercised by the judge, as any prudent business man would exercise it. And it must be supposed that where the security was ample and good beyond reasonable doubt, that the court would approve the security. We are inclined to hold that the failure to procure the approval of the court to the security, and if the loss ensues on account of the subsequent depreciation of the property in the market, that such want of approval shall not be deemed conclusive evidence against the guardian that the loss ensued on account of want of care on his part in taking the security. But inasmuch as the guardian has not followed the direction of the statute, we think he should be held to show clearly and beyond reasonable doubt, that the loss did not occur on account of the want of good business judgment in taking the security.

He must show by evidence to the entire satisfaction of a court or jury trying the issue, that any prudent business man would have taken the security, and that the court would undoubtedly have approved it, had the question been presented.

While there is any reasonable doubt or question about the good judgment in taking the security, the guardian should not be heard to say that the court would have approved it.

The appellees claim that the court below should have charged the guardian with the attorney's fee of Stephenson & Ewing and O'Brien of $2,124.66, and that of Hughes and McGort of $350. This attorney's fee, it appears from the evidence, was charged for obtaining the judgment and collecting it from the said railroad company, out of which all the assets in question arose.

It appears also that the litigation was long and protracted and that the charges were no more than were reasonable under all the circumstances. That these fees were taken out of the judgment when it was collected, and before appellant Hughes was guardian, and that none of it ever came to his hands. It is claimed, however, that he should have sued for them. From the evidence in the case we are unable to see that such was his duty. The probable result of such action would have been that he would have lost the suit, and been thrown into a large bill of unnecessary costs. There are no cross-errors assigned by appellees, complaining of the action of the court in not allowing such charge against the appellants, though the question is raised in argument.

For the reasons above, the judgment of the court is reversed and the cause remanded.

Reversed and remanded.

PILLSBURY, J. I concur in reversing this judgment on the ground that the damages are excessive, but I do not concur with the opinion of my brethren, as to the effect of a failure upon the part of the guardian to procure the approval of the county court to the securities proposed to be taken by him upon the loan of the ward's money.

In my view it is the statutory duty of a guardian to thus obtain the approval of the court, and the ward has the right, under the statute, to have this duty performed as an additional caution in the investment of her money, and security against loss.

The statute has provided that the judgment of the county court shall be exercised in behalf of the ward, and it can not be said with any degree of certainty, that had the exercise of such judgment of the court been asked for, that it would have been granted in the given case. The county court has, when such questions come before it the right to call parties entirely disinterested, and who are acquainted with the security, the location of it, and all the facts and circumstances surrounding it, tending to show its present and prospective value, and thus become fully advised in the premises.

Or it may be that the county judge may have personal

knowledge of facts of which the guardian may be ignorant, making a loan a hazardous one for the interests of the minor. But whatever the cause that led the legislature so to provide for such approval, it has done so, and thereby invested the ward with the right to such judgment of the county court.

I agree with the majority opinion, that the statute makes it the duty of the guardian to invest his ward's money, and that a mere neglect to obtain the approval of the county court, where he has been otherwise diligent and careful, will not render him guilty of converting his ward's money, or make the loan his own; but I think that if he neglects this statutory duty to have the court pass upon the adequacy of the security, he does so at the peril of seeing that the security taken upon his own judgment and responsibility, returns to the ward the money so invested. In other words, that any deficiency occurring through a failure of the security to reimburse the ward, must fall upon the guardian.