John M. Zimmerman, and Annie A. Zimmerman his wife, and others *vs.* Margaret A. Fraley, Assignee of F. M. Fraley, and others.

*Trustee and Cestui que trust—Substituted trustee—Exercise of Discretion—Breach of Trust—Acquiescence—Proof of Acquiescence—Laches—Estates for Life and in Remainder—Practice in Equity.*

N. H. bequeathed a share of his estate to a trustee to be by him invested for the separate use of M. A. F. in such manner as the trustee might deem advisable, and in further trust to pay over the income to M. A. F. during her life; and directed the trust estate, upon the death of M. A. F., "to be paid to" her "heirs entitled by law to the same." The said trustee died after assuming the trust, and J. J. Z. was appointed trustee in his place and stead, "to carry out, execute, and complete" said trust. The new trustee made a report showing that the trust estate received by him from the executors of the former trustee consisted of certificates of Bank stock, and a promissory note out of date. And upon his report and petition an order was passed empowering him to sell the stock, and directing him to "invest the proceeds of sale in good landed security;" and requiring him to "report his proceedings to and bring the investment into  *  *  *  Court for its action thereon." The trustee made no report of his proceedings, but some five years after the order was passed, he sold the stock and applied the proceeds in part payment of a farm which had been purchased by M. A. F.; and which, on payment of the whole purchase money, was conveyed by the vendor to him as "trustee of M. A. F. under the will of N. H." On a bill filed against the trustee after the death of M. A. F. by the assignee of her son, one of the three persons entitled in remainder to said trust estate, for an account of the trust and the payment to the complainant of one-third of the trust estate, it was Held:

1st. That the decree appointing the substituted trustee, while imposing upon him the duty of executing the trusts created by the will in respect to the fund in question, did not clothe him with the

36          v. 70.

Zimmerman, *et al.* *vs.* Fraley, *et al.*

discretion which the testator had reposed in the person selected by himself.

2nd. That the order for sale and investment, only permitted him to invest in landed securities, and the purchase of land was not such an investment.

3rd. That by using the funds in the purchase of land, he committed a clear breach of his duty; and as a consequence he and his sureties were obliged to restore to the *cestuis que trust*, in money, if they demanded it, the whole amount so misapplied, unless the *cestuis que trust* had participated in the misappropriation in such a way as to be binding on them, or, being legally capable of doing so, acquiesced in or sanctioned the act complained of.

4th. That evidence of such acquiescence must be full and satisfactory, and the same measure of proof will be required as in the proof of other dealings between the trustee and *cestui que trust.*

5th. That no acts of acquiescence by M. A. F. the *cestui que trust* for life, could be binding on the persons entitled to the remainder.

6th. That the remainderman, could have invoked the aid of a Court of equity, even during the life-time of his mother, to correct this breach of trust, and if he had been guilty of laches in the assertion of his rights, or had acquiesced in the breach of trust, he could not be allowed after the investment had proved disastrous, to repudiate his acquiescence, and to hold the trustee liable for the losses which had ensued.

7th. That as the promissory note received by the trustee, was barred by limitations when he received it, and he had been unable to get an acknowledgment from the makers, the same became valueless by no act or default of his, and he ought not to be charged with the amount due upon it.

Where a bill is filed for an account of a trust estate, by a person owning only one-third of the same, and the prayer for relief is restricted to that interest, it is error to decree a distribution of the whole trust fund to the several *cestuis que trust.*

APPEAL from the Circuit Court for Frederick County, in Equity.

The case is stated in the opinion of the Court. The decree appointing Joshua J. Zimmerman, trustee, pro-

vides that he be "appointed trustee in the place and stead of John Zimmerman of John, deceased, to carry out, execute, and complete the trust created by the will of Nicholas Holtz, deceased, in favor of Mary Ann E. Fraley," &c.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, BRYAN, and MCSHERRY, J.

*John E. R. Wood,* and *John C. Motter,* for the appellants.

The first question presented is, could the trustee exercise the discretion in the trust clause of the will of Nicholas Holtz, or did his application to a Court of equity and the decree appointing him trustee, so change the trust clause, and limit his duties to the limits of a trustee under an ordinary decree in equity? Asking the aid of the Court in the exercise of his duties did not and does not limit his discretion of investment. And if he acted honestly and in the exercise of ordinary judgment and discretion such as he would use in his own business affairs, he has discharged his full duty. *Green vs. Putney,* 1 *Md. Chan. Dec.,* 262; *Gray vs. Lynch, &c.,* 8 *Gill,* 419.

But the decree appointing the trustee, instead of abrogating the discretion in the trustee, especially declares he shall carry out the very terms of that trust. If it be conceded that the trustee had such discretion of investment as contained in said will, then it must be conceded that the trustee cannot be liable for any loss involved, unless it shall be found from the evidence that he acted in bad faith. But if the trustee had no such wide discretion and was limited to the narrow and defined duties under a decree of a Court of equity, still there has been no breach of trust.

Even if the trustee acted under the decree to sell the Bank stock and invest in safe landed security, and to

report his proceedings to the Court for confirmation, he has fully performed his duty, except in a failure to report his investment for confirmation. This is no such breach as makes him responsible for the trust fund, as contended. Because a Court of equity will "ratify that which when done, it would have ordered to be done, and will consider that done which ought to have been done." These are fundamental principles of equity.

The investment in this case was in fact made by the *cestui que trust* for life and her son, Francis M. Fraley, who was entitled to one-third absolutely at her death.

The trustee in this case acted in good faith, and the investment was considered good by the *cestui que trust* and by the trustee, and the income from it the year it was bought proved it profitable. The trustee becoming security for the sum over and above the trust fund proves his good faith. In this case he ought not and will not be responsible for any subsequent loss. *Gray vs. Lynch and McDonald*, 8 *Gill*, 419.

The taking of the deed, instead of a mortgage by the trustee, was not a breach of trust, because the Court would, upon application by any of the parties, construe it a mortgage. It was beneficial to all but the life tenant. A mortgage is only a conditional deed. Taking a deed saved expense of foreclosure, which might have been necessary under a mortgage. This investment was made with assent of the *cestui que trust* for life, and her son who was entitled to one-third in remainder. They in fact made the investment. They bought the farm, and knew what was paid for it. They took the checks of the trustee, the trust fund, and paid on the land. Who could give the trustee ampler assent than this? Who had a better right to advise and induce the trustee in what to invest the fund? Who could have less right to complain of the loss of the trust fund?

Zimmerman, *et al. vs.* Fraley, *et al.*

The assent of Mrs. Stone must be found as well as that of Francis M. Fraley; not so much from what they swear to now, after the loss, as from what they did and knew at the time of the investment. Their acts and doing then, present a striking contrast with their testimony now. From these circumstances, and their acquiescence for ten years, assent must be inferred. 1 *Lewin on Trusts, Text Book Series,* 345, 346, 370, 439 *and* 450; 2 *Lewin on Trusts,* 1125; 3 *Lewin on Trusts,* 1143, 1168.

There was no breach of trust in not annually reporting. Trustees, as a rule, do not report annually; besides he had nothing to report. He paid her all the Bank dividends as they accrued, even overdrew it from the Bank, and from the farm *cestui que trust* collected all herself or themselves.

He never had a cent, never kept a cent; turned all over to them, principal and interest. Hence had no need to keep an account or make a report, except he ought to have reported the investment. But his failure was not such a breach as to render his bond liable for the subsequent loss, which was in part due to the decline in land, but more largely to the negligence and waste of the *cestuis que trust* in managing their own property.

The note for $258 of Mrs. Fraley secured by Samuel Zimmerman was barred by limitations when received from the former trustee, and the trustee could not collect it, and had no right, nor could he by law retain it out of the annual interest or dividend. The testimony on this branch is undisputed and indisputable.

*William P. Maulsby, Jr.,* for the appellees.

McSHERRY, J., delivered the opinion of the Court.

Nicholas Holtz by his will bequeathed a share of his estate to John Zimmerman of John and his heirs in

trust, "to be by him invested for the separate use of" Mary A. Fraley, in such manner as the trustee might deem advisable, and in further trust to pay over the income to her during her life. The testator directed the trust estate, upon Mrs. Fraley's death, "to be paid to" her "heirs entitled by law to the same." Zimmerman accepted the trust and some years afterwards died. Thereupon his executors filed a petition on the equity side of the Circuit Court for Frederick County asking the appointment of a new trustee, and on the second day of September, eighteen hundred and sixty-three, a decree was passed appointing Joshua J. Zimmerman. On the twenty-second day of December of the same year, the new trustee made a report of the trust estate which had come into his hands. This report showed that he had received from the executors of his predecessor certificates for two hundred shares of the capital stock of the Frederick County Bank, a promissory note of the *cestui que trust*, Mary A. Fraley for two hundred and fifty-eight dollars, dated in April, 1851, and seventy-five cents in cash. He represented to the Court in this report that he had "an opportunity of investing the sum of $3000 of said trust funds with undoubted and safe landed security," and he then asked for authority to sell the Bank stock for the purpose of making that investment. On the same day the Court passed an order empowering the trustee to sell the stock, directing him "to invest the proceeds of sale in good landed security," and requiring him to "report his proceedings to and bring the investment into * * * Court for its action thereon." In the latter part of 1868 and early in 1869, Zimmerman sold the Bank stock. The proceeds of these sales, aggregating $3675.00, he paid in November, 1868, and January, 1869, to one Daniel Culler in part payment for a farm of about one hundred acres, which Mrs. Fraley,

through her son, Francis M. Fraley, had purchased.
To secure the balance of the purchase money, Zimmer-
man gave to Culler a mortgage upon his, Zimmerman's,
personal property; and on January 19th, 1878, when
that balance had been paid out of the proceeds of the
sale of real estate owned by Mary A. Fraley, Culler
conveyed the farm to Zimmerman, whom he described
in the deed as "trustee of Mary Ann Fraley under
the will of N. Holtz." The trustee made no report
of this transaction to the Court. Shortly after the
execution of this deed Mrs. Fraley died leaving sur-
viving her a son, Francis M. Fraley, a daughter
Ellen Stone and a granddaughter, the child of a de-
ceased son. On the 12th of February, 1879, John W.
Hargate, to whom Francis M. Fraley had assigned
his interest in the trust estate, filed a bill against
Zimmerman calling on him for an account of the trust,
and praying for a decree compelling him to pay over
the one-third of the trust estate which had been origi-
nally received by him. The case was not brought to
a final hearing until September, 1888, more than nine
and a half years after the bill had been filed. In the
meantime Hargate assigned the interest he acquired
from Fraley to Fraley's wife; Zimmerman's own prop-
erty was sold under mortgages and Zimmerman himself
died. His heirs were made parties and from the decree
holding his estate liable for the whole of the trust
funds and directing the surplus in the hands of the
trustee who made sale of Zimmerman's property under
the mortgages alluded to, to be applied in replacing
the trust money invested in the farm and in the prom-
issory note referred to, they have appealed to this
Court.

It is of the most vital importance that trustees be
held to a strict and rigid accountability; and however
serious may be the consequences which in particular

cases the application of this rule may entail upon the individuals affected, or upon their heirs or sureties, insensibility to those consequences is a stern and an imperative mandate of judicial duty. It is infinitely better, even in exceptional cases of manifest hardship, that a trustee should suffer the results of his own errors and mistakes of judgment, than that the settled and established principles which have uniformly governed Courts of equity in protecting the interests of the *cestui que trust,* against the trustee, should be relaxed or strained in the slightest degree for his acquittal or relief. His duty requires of him the exercise of high diligence and absolute good faith; and whilst the law affords him ample protection if he seeks the aid and follows the direction of the Courts having jurisdiction over the subject, it generally fixes upon him the responsibility for all losses which may result from unprofitable or unfortunate investments made upon his own discretion and judgment. *Wayman vs. Jones,* 4 *Md. Ch. Dec.,* 500. There can be no question as to his liability when the trust estate has been wasted by his own breach of trust, although he may have acted with the best intentions. *Ringgold vs. Ringgold,* 1 *H. & G.,* 11; unless the *cestui que trust* with full knowledge of the facts, and of his rights in the premises, and being under no legal disability, sanctions or acquiesces in the wrong. *Hill on Trustees, mar. pg.* 382 *& 525, and cases there cited.*

Joshua J. Zimmerman was a substituted trustee who derived his authority from the decree by which he had been appointed. That decree whilst imposing upon him the duty of executing the trusts created by the will of Holtz with respect to the fund in question, did not clothe him with the discretion which the testator had reposed in the person selected by himself. With powers thus defined he was authorized in 1863 to sell

the Bank stock, solely for the purpose of investing the proceeds in "landed security,"—he then having, so he stated in his petition, an opportunity to make such an investment. He suffered five years to elapse before making sale, or even attempting to make sale, of the stock; and when he did sell, instead of doing the only thing which the order of the Court had empowered him to do, he applied the trust funds in partial payment for land bought by Mrs. Fraley, the *cestui que trust* for life. He neglected, as we have said, to make any report of this to the Court, and he did not afterwards exercise any supervision or control over the land. Even if he supposed he had authority to do what he did, as seems to be the fact, his act was none the less an unequivocal breach of trust. The order only permitted him to invest in landed securities and the *purchase* of land was not such an investment. A trustee cannot convert by *purchasing* land with the trust moneys. *Ringgold vs. Ringgold*, 1 *H. & G.*, 11; *Bonsall's Appeal*, 1 *Rawle*, 273; *Royer's Appeal*, 11 *Pa. St.*, 36.

The case of *Gray vs. Lynch & McDonald*, 8 *Gill*, 403, relied on by the appellants, is clearly distinguishable from the one at bar. There the trustees, in the exercise of a fair discretion and in perfect good faith, made an investment which would have been ratified by the Court upon application; and the Court of Appeals, perhaps influenced by the particular circumstances, exonerated the trustees when loss ensued, though no such ratification had been procured. We are unwilling to go beyond the exact limits of that decision, or to apply the principle it establishes in this particular to a case not precisely similar in all respects. Here, however, the trustee was not left to his own judgment to make an investment. He found the funds already invested and under the case of *Gray vs. Lynch & Mc-*

*Donald,* he had no right to sell the stock and invest in other securities without express authority. He did obtain authority to sell for a specific purpose, and he was expressly directed what he should do with the proceeds of that sale. Instead of obeying that direction and making the investment ordered by the Court, he disregarded it and made a totally different investment. There is, consequently, no ground for presuming that had this state of facts been reported to the Court, the Court would have sanctioned and approved an act done so long after the date of its order and in palpable violation of it—done, too, when the conditions existing at the time the authority was procured had materially and radically changed.

Without questioning or inquiring into the motives which influenced the trustee, we are constrained, upon principle and authority, to hold that he committed a clear breach of his duty in using these funds in the purchase of land. As a consequence of this, his estate and his sureties are obliged to restore to the *cestuis que trust* in money, if they demand it, the whole amount so misapplied, unless the *cestuis que trust* participated in the misappropriation in such a way as to be binding on them; or, being legally capable of doing so, acquiesced in or sanctioned the act now complained of. This brings us to the consideration of the defence chiefly relied on.

There can be no doubt that a *cestui que trust* who has participated in a breach of trust, or who knowing all the facts and being apprised of his legal rights, and being under no disability to assert them, has acquiesced in the wrongful act of the trustee, will not, upon the plainest principles of justice, be allowed, in a Court of equity, to recover for the losses which have resulted from investments that he himself has influenced or knowingly sanctioned or assented to. But the proof

of this defence rests on the trustee.    Lord Chancellor BROUGHAM observed in *Bennett vs. Colley,* 2 *Mylne & Keen,* 232, "it can never be maintained that the acquiescence of a party, under ignorance of his rights, operates as a waiver of any claim, or as a confirmation of any thing done against him.    Neither can it be seriously contended that the proof of ignorance, or want of notice, lies on the party against whom such acquiescence is alleged."    Evidence of acquiescence in cases like this must be full and satisfactory.    The same strictness is required as in the proof of other dealings between the trustee and *cestui que trust.    Dorsey vs. Banks, ante page* 508, clearly lays down the measure of such proof.

It is unnecessary to advert to the testimony bearing upon the alleged acquiescence of Mary A. Fraley, the *cestui que trust* for life, because no mere acts of hers, however clearly established, could be binding on the persons entitled to the remainder.    There are three persons entitled to that remainder—an infant, a married woman, and Francis M. Fraley.    The rights of the infant and of the married woman are not before us. The testimony of the trustee is the only evidence in the record directly relating to Fraley's alleged acquiescence.    Zimmerman, the trustee, swore that Francis M. Fraley distinctly assented to the investment. Fraley, with equal emphasis testified that he did not assent thereto, but protested against what was done. Zimmerman stated that he had conversed several times with Mrs. Stone, one of the *cestuis que trust,* and with her husband, and that they both sanctioned what he had done.    Stone and his wife, in their testimony, expressly and pointedly contradict this assertion.    Upon this state of the evidence, notwithstanding the record discloses some very serious charges against Fraley, it would not be possible to hold that the trustee had discharged the *onus* of proof placed upon him by the law.

There can be no doubt that Fraley could have invoked the aid of a Court of equity, even during the lifetime of Mary Ann Fraley, to correct this breach of trust. *Browne vs. Cross,* 14 *Beav.,* 105. If then, with a full knowledge of his rights and possessing the power to assert them, he stood by for more than ten years and did nothing, or received benefits from the wrongful act of the trustee, he cannot be allowed, after the investment has proved to be disastrous, to repudiate his acquiescence and to hold the trustee liable for the losses which have ensued. But if he was misled by the trustee, whether designedly or not is immaterial, he cannot be made to bear the loss occasioned by the breach of trust complained of. Now, Fraley has testified that Zimmerman told him "that he," Zimmerman, "had got an order from the Court to sell the Bank stock *and buy land with it.*" This statement is fully verified by Zimmerman himself in his answer to the 128th interrogatory propounded to him. Again, Fraley says Zimmerman told him the trust funds would be replaced by the proceeds of the sale of timber to be cut from the land, and this Zimmerman distinctly corroborates in his answer to the 49th and 57th interrogatories. Fraley further states that he believed what Zimmerman told him and did not discover the contrary until the spring of 1877. Being misled by the trustee and being in ignorance of his rights and the remedies open to him, as he says he was, neither laches nor acquiescence can be imputed to him. A careful examination of the record has failed to convince us that the defence relied on has been established, for all the other acts set up, such as bargaining for the land and cutting and hauling wood therefrom seem, as far as done by Fraley, to have been done by him at the instance of and as the mere agent for his mother, the life tenant, and apparently in accordance with what Zimmerman said was

the plan adopted to pay for the farm, whilst he, Fraley, was wholly ignorant as to the true state of the facts. We are, therefore, of opinion that so much of the decree as holds Zimmerman liable to the appellee, Margaret, for one-third of the proceeds of the sale of the Bank stock with interest from the date named in the decree, less the sums stated in the decree to be due by Fraley to Zimmerman, is free from any error.

We are unable, however, to agree with the learned Judge of the Circuit Court in charging the trustee with the amount of the promissory note heretofore alluded to. The note had been barred by limitations for more than twelve years when Zimmerman received it. He was unable to get an acknowledgment from the makers, who repudiated it whenever called on for payment. It would have been useless for the trustee to involve the estate in the costs of a suit for collection under such circumstances. The note became valueless by no act or default of Zimmerman and he ought not to be charged with the amount due upon it.

As the bill was filed by the person owning only one-third of the trust estate and as the prayer for relief was restricted to that interest; the decree which, inadvertently, covers the whole of the trust fund and makes distribution of it to the several *cestuis que trust* is entirely too broad.

It results from what we have said that so much of the decree as holds the trustee liable to the appellee, Margaret, for one-third of the proceeds of the sale of the Bank stock and one-third of the cash with interest from the date of Mary A. Fraley's death, less the sums due by Fraley to Zimmerman, as found by the Court below, must be affirmed, and that the residue of the decree must be reversed, and the cause must be remanded that a decree may be passed in conformity with this opinion. Under the circumstances of this case one-half of the

costs in this Court and in the Court below, must be paid by the appellee, Margaret, and the other half by the appellants.

> *Affirmed in part, and reversed in part, and cause remanded.*

(Decided 3d May, 1889.)

ROBINSON, J., dissented.