MARY E. HAAS, Ex'x et al. *vs.* MARY J. McGINN, *Tr.*

FEBRUARY 9, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. The complainants, as executrices of the will of the late Catherine J. McGinn, who died in the city

of Providence on December 12, 1934, brought this bill of complaint for an accounting against the respondent as trustee of a trust estate created by the will of Walter V. McGinn of Providence, deceased. The cause was heard by a justice of the superior court on bill, answer and proof. Both parties question certain rulings of the trial justice and have appealed to this court from a decree of the superior court which was entered in accordance with such rulings.

Walter V. McGinn died testate on September 8, 1929, seized and possessed of real estate taxed for $232,100. The real estate consisted almost entirely of low-renting tenement property, requiring constant oversight as to maintenance and tenants. His widow, Mary J. McGinn, the present respondent, was named and qualified as executrix of his will, and also as trustee of the real estate under a trust created by the testator in the third paragraph of the will, which is as follows.

"THIRD: I give and devise all of the real estate of which I may die possessed or which I may be entitled to, either in law or equity, to my beloved wife, Mary J. McGinn, in trust nevertheless, as follows: to wit:

(A) The said trust to be and to continue until my said son shall obtain the age of twenty-five (25) years:

(B) The income from said real estate is to be equally distributed as follows, to wit:—one third thereof to be paid quarterly to my beloved mother, Catherine J. McGinn for her own use during the term of her life, or, if she should be then living, until my said son shall attain the age of twenty-five (25) years; one third thereof to be paid quarterly to my said wife, Mary J. McGinn for her own use, during the term of her life, or if she should be then living until my said son shall attain the age of twenty-five (25) years; one third thereof to be expended by my said wife, Mary

J. McGinn as such trustee, or by any Trustee who may be hereafter appointed in her place and stead, for the proper support, maintenance and education of my said son, Walter V. McGinn, Jr. until he shall attain the age of twenty-five (25) years, when said trust shall cease and terminate. . . ."

The testator's mother, Catherine J. McGinn, and his widowed sister, Mary E. Haas, one of the complainants in this cause, were living with him when he died. The mother was then eighty-five years old and almost totally blind. Following the testator's death, the mother and sister continued to live as members of that household, which, in addition to themselves, included the testator's widow, Mary J. McGinn, the respondent here, and his son, Walter V. McGinn, Jr. Apparently their relations were friendly, at least until the death of Catherine J. McGinn on December 12, 1934. In August 1935, Mrs. Haas went to live with her sister, Lucy A. M. Thompson, the other complainant in this cause.

Catherine J. McGinn left a will naming her two daughters, Mary A. Haas and Lucy A. M. Thompson, as executrices, who duly qualified as such. The present bill of complaint was brought by them on August 11, 1936. The period for which the trustee is asked to account in this cause extends from the death of Walter V. McGinn, on September 8, 1929, to December 12, 1934, when Catherine J. McGinn died.

It appears in evidence that for many years prior to the death of Walter V. McGinn the respondent had assisted him in the collection of rents and in the maintenance of his real estate. After his death, she, as trustee of all his real estate, attended to these matters personally or in cooperation with Mrs. Thompson and the latter's daughter, Barbara T. McClusky. In the respondent's capacity as trustee, she kept the accounts relating to the trust in the same manner that her husband employed in his lifetime. No books or records of any kind were kept by her showing

specifically the sources of income, or the application of the disbursements, which were represented merely by bills and cancelled checks without identifying notations. In this respect she treated the trust estate as if it were her own property.

By the terms of the trust, one third of the net income from the trust property was to be paid quarterly to Catherine J. McGinn until her death, when her interest in the trust estate would cease. No such payment was ever made to her by the trustee in her lifetime. Nor did the trustee render any account to Catherine J. McGinn before she died, or to her executrices, these complainants, until she was obliged to do so by decree of the superior court. The subpoena in this cause is dated August 25, 1936, and the trustee's amended account now before us was filed October 28, 1938. The trust was terminated for all purposes in December 1937, when Walter V. McGinn, Jr., the testator's son, became twenty-five years of age.

The respondent contends that the trial justice erred in refusing to allow her any compensation as trustee for the period covered by this accounting. Her testimony bearing on this point in substance is that the affairs of the household and the management of the property were unaffected by her husband's death; and that neither Catherine J. McGinn nor any one in her behalf ever asked for an accounting. In effect, her contention is that Catherine J. McGinn, knowingly waived, by conduct at least, any right to an accounting under the trust.

The testimony of the complainants is quite different. Mrs. Thompson testified that the question of an accounting was the subject of many discussions between her mother and the respondent, and that the latter's "answer was always 'I can't give you anything now, not until Walter is twenty-five years of age.'"

She further testified that she asked the respondent's attorney several times for an accounting to her mother; that on one occasion, when she and the respondent were going to his office, her mother told her in the respondent's presence to ask the attorney "When am I going to have my share of my son's estate? When is there going to be an accounting for me?"; that she carried out this request; that the attorney's answer to them was: "It is just a case of arithmetic; you just take and add up the figures, draw a line, write your result, and divide by three; just a matter of arithmetic"; and that when she told her mother what the attorney had said the latter expressed her feelings in the matter in rather forceful language.

The testimony of Mrs. Haas and Mrs. Thompson's daughter, Barbara T. McClusky, is generally to the same effect. Referring to Mrs. Thompson's testimony concerning the visit to the attorney's office, the respondent testified in rebuttal that she could not remember any such incident.

Mrs. Thompson also testified that, in March 1935, she asked the respondent to pay her mother's funeral bill, and that the respondent answered: "No, she couldn't, because there was no money for Mrs. C. J. McGinn in her son's estate." The respondent admitted this conversation, with the qualification that she did not have any money belonging to Catherine J. McGinn "at that time." According to the respondent's amended account in this cause, a substantial sum of money was due and owing from her, as trustee, to Catherine J. McGinn at the time of the latter's death on December 12, 1934.

The respondent's attorney testified that, following the death of the testator, the will was carefully explained to the respondent; that he then told her that she was to pay quarterly one-third of the net income from the trust property to Catherine J. McGinn; that he did not advise

her at any time that she was under no obligation to account to Catherine J. McGinn; and that he did not know whether she had ever accounted to Catherine J. McGinn before her death, as the respondent had not consulted him regarding such matter. He further testified that when, in 1936, the respondent asked him about the present proceedings, he explained to her the purpose of this bill of complaint and advised her "to make" an account of her doings as trustee under her husband's will. "Q. Did she make one? A. No. There were various reasons why she did not make one." The alleged reasons were not given, but it seems that the respondent did not take kindly to his advice.

The law is well settled that it is the duty of a trustee to execute the trust in strict accordance with its terms. A trustee is allowed compensation if he executes the trust with proper care and diligence. On the other hand, he is generally denied compensation if he disregards his duty under the trust and fails to account, especially in a case where he is compelled to do so by law. In *Zimmerman* v. *Fraley,* 70 Md. 561, at page 567, the court says: "It is of the most vital importance that trustees be held to a strict and rigid accountability; and however serious may be the consequences which in particular cases the application of this rule may entail upon the individuals affected, or upon their heirs or sureties, insensibility to those consequences is a stern and an imperative mandate of judicial duty." *Reich's Estate,* 230 Pa. 55, 57; *Norris' Appeal,* 71 Pa. 106, 125; *Ward* v. *Funsten,* 86 Va. 359; *Singleton* v. *Lowndes,* 9 S. C. 465. See also 26 R. C. L. 1393; 2 Perry on Trusts, 1558; Loring, A Trustee's Handbook, (4th ed.) 43.

Conceding the respondent's honesty, the complainants strongly contend that the ruling of the trial justice denying the respondent compensation for her services as trustee is without error. When the evidence in this cause is

considered as a whole, it is fairly open to the conclusion that the respondent wilfully and intentionally, though honestly, saw fit to disregard her duty as trustee in so fundamental a matter as the payment of the net income from the trust property in accordance with the express and clear provisions of the trust. At least on one view of the evidence it is reasonable to conclude that the respondent, notwithstanding her attorney's advice when the trust came into existence, determined for herself how the trust should be administered, and thereafter intentionally followed a course of conduct during the life of the trust, as far as Catherine J. McGinn was concerned, which was in clear violation of her duty as trustee under the plain terms of the trust. In such a view of the evidence, it appears that the respondent believed that she was under no duty as trustee to make any payment or give any accounting to Catherine J. McGinn, so long as she was adequately cared for, until the respondent's son, Walter V. McGinn, Jr., became twenty-five years of age.

The trial justice apparently took this view of the evidence. Since such a view is reasonably supported by the evidence, we cannot say that he was clearly wrong in denying the respondent compensation for her services as trustee in the circumstances of this cause. As the court well said in *Zimmerman* v. *Fraley, supra*, at page 568 of that opinion: "It is infinitely better, even in exceptional cases of manifest hardship, that a trustee should suffer the results of his own errors and mistakes of judgment, than that the settled and established principles which have uniformly governed Courts of equity in protecting the interests of the *cestui que trust*, against the trustee, should be relaxed or strained in the slightest degree for his acquittal or relief."

The respondent's second complaint is that the amount fixed by the trial justice as counsel fees for legal services

to her as trustee is clearly inadequate. The attorney concerned was permitted to testify in great detail as to all legal services rendered by him to the respondent, whether as executrix or as trustee, from the death of the testator, in 1929, to the trial of this cause, in 1938. The complainant's testatrix being entitled only to income for her life, the only question involved in these proceedings is what legal services were properly chargeable to income under the trust, and what was fair compensation for such services. Services that the attorney may have rendered to the estate of the testator or that should be charged to principal and not to income of the trust, are not involved in this cause. Compensation for these services must be sought in other proceedings.

It was incumbent upon the respondent to prove the legal services that properly could be charged to the income of the trust, and also the fair compensation for those particular services. We find no such proof either in the 104 pages of the attorney's testimony, or elsewhere in the evidence. The amount claimed by the respondent as counsel fees appears in the testimony as one lump sum for all services rendered to her, only a minor part of which services was properly chargeable to trust income. Out of this confused mass of testimony, the trial justice selected and fixed compensation for those items of legal services that he considered proper in connection with an account of income under the trust. In the circumstances we are unable to say that he was clearly wrong in his conclusion on this point.

The respondent further urges that the trial justice erred in reducing an appraiser's fee. In his decision the trial justice dismisses consideration of this item by saying: "Counsel agree that the Hurley appraisal charge shall be changed from $450 to $90." There is nothing in the record to show that this statement by the trial justice was incorrect. The respondent's contention on this point is therefore without merit.

The respondent further contends that the trial justice was in error when he refused to allow her to charge the account in the instant cause with the amount paid for taxes, from 1929 to 1934, on a number of unsold lots of unimproved land in the town of Barrington, which were part of the trust estate. The trial justice properly struck this item from the account. Taxes assessed against the unproductive portion of the trust estate are chargeable to principal and not to income. 2 Perry on Trusts, 949; 65 C. J. 717; 26 R. C. L. 1383. See *Sheffield* v. *Cooke*, 39 R. I. 217.

We now come to the only contention urged by the complainants under their appeal from the decree entered on the decision of the trial justice. They maintain that, "in the absence of affirmative consent on the part of the *cestui que trust* to a deviation from the terms of the trust, this trustee should be required to account with annual rests and should be taxed interest at the legal rate for all amounts in arrears." As we understand the complainants' contention, it is that interest attached by operation of law on the amount of income that was payable to the beneficiary, Catherine J. McGinn, at the end of each year involved in this account.

The trial justice rejected this contention, holding that Catherine J. McGinn "can be said to have waived an accounting during her life, and so the Court will not charge the trustee with interest from the date of the creation of the trust until the death of Catherine McGinn." In this instance, we find clear error by the trial justice. Whether there was a waiver by the beneficiary of a trust depends upon the particular circumstances in evidence. The beneficiary of a trust is not to be held as consenting to a deviation by the trustee from the terms of the trust, unless such consent is established by full and satisfactory evidence. 65 C. J. 817. *Zimmerman* v. *Fraley, supra.*

In the instant cause, the evidence and the reasonable inferences therefrom, which we discussed when considering the respondent's, claim for compensation as trustee, are clearly insufficient to establish that Catherine J. McGinn knowingly and intentionally waived any of her rights under the trust. The trial justice found that she had not waived her right to an accounting. Therefore, any failure by her to enforce her claim for an accounting cannot reasonably be construed as a waiver of interest on the account, unless the contrary is shown by evidence. We find no such evidence in the record before us.

As a general rule, a trustee who, without lawful excuse, fails to pay over the income of a trust fund to the beneficiary in accordance with the terms of the trust, may be charged simple interest at the legal rate from the time such payment is due, or, more commonly, on annual balances. *Spencer* v. *Pierce,* 5 R. I. 63, 71; *Hazard* v. *Durant,* 14 R. I. 25; *Curran* v. *Green,* 18 R. I. 329; *McCrillis* v. *McCrillis,* 49 R. I. 240. Interest in such a case is not a penalty but a legal incident of the principal debt due and owing the beneficiary.

The respondent's amended account in the instant cause shows a running account of the yearly gross income from the trust property and the expenses incurred by her for each year during the period in question. Although no annual balances are actually shown, these may be obtained, however, by simple computation. In our opinion, the complainants are entitled to simple interest at the rate of six per cent on whatever annual balances may appear by such computation. We are also of the opinion that the complainants are entitled to such interest on the total sum of net income from the date of Catherine J. McGinn's death.

The complainants' appeal is sustained. The respondent's appeal is denied and the decree appealed from is reversed in part.

On February 16, 1940, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Francis E. Sullivan,* for complainants.

*Cooney & Nolan, James E. Smith,* for respondent.