*Judgment reversed and procedendo awarded.*

---

# EDEN SHIPLEY and wife, Admr's of CHARLES WOOD, EX-PARTE.

When money in the hands of an administrator is deposited or invested by order of the orphans court, under the act of 1831, ch. 315, it is the duty of the court to hear suggestions from those interested, for the purpose of having the money removed, if in danger of being lost to the estate, and it may do this *ex-officio* without application, but when it has acted upon such application, its decision is final and no appeal will lie.

In these cases the orphans courts are clothed with a discretion: that is, a sound judicial exercise of the authority vested in them by the act, with reference to the security of the fund, not an arbitrary or capricious decision.

If the court in such a case should act without hearing evidence, if offered, or allowing time to the parties to produce their proofs, it would not be a proper exercise of the power conferred by this law, but this court must presume that the court below has properly exercised its powers until the contrary appears.

APPEAL from the orphans court of Baltimore county.

Shipley and wife were appointed administrators of Wood, on the 3rd of February 1853, and gave bond as such. On the 2nd of August of the same year, one of the sureties in the bond, filed his petition in the orphans court, praying for an order directing the administrators to bring into court $2800, part of the estate in their hands, to be invested until final settlement and distribution. The administrators assented, and the court directed the fund to be brought in and deposited in the Franklin Bank of Baltimore, which was accordingly done. On the 9th of November following, the court, upon the application of Shipley, withdrew the fund for the purpose of paying him thereout $200, for the maintenance of the infant child of the deceased, and ordered the balance $2600, to be deposited in the Fremont Savings Institution.

On the 22nd of the same month, Shipley and one of his sureties filed a petition praying that the fund be withdrawn, and again placed in the hands of the administrator and his sureties, which petition the court on the same day dismissed, remarking that the withdrawal asked for appeared to be not for the purpose of paying debts of the estate, but to return the fund to the hands of the administrator to be used by him. On the same day the same parties filed another petition, again asking that the fund be withdrawn and paid into the hands of the administrator, and charging that the fund was lying idle and unproductive, and that said institution is not responsible or solvent, and the fund is in great danger of being utterly lost to the estate. On the same day the court passed an order in which, after stating the previous proceedings, and that the money was deposited to bear interest at the rate of four per cent., after three months from the time of its deposit, they refused to grant the prayer for the reasons as stated by them :

1st. Because the fund was not lying idle or unproductive, but was in progress of productiveness, according to the regulations of the institution ; and 2ndly, because no evidence has been furnished against the solvency of said institution, or any proffer to select a place of deposit more worthy of confidence. The court also remarked, that they could not consent to be made an instrument by their judicial order of reflecting upon the solvency of a monied institution, whose character stands, as far as they are informed, without reproach, and passed an order dismissing the petition. From this order the administrators Shipley and wife appealed.

A motion was made to dismiss this appeal, on which, as well as on the merits, the cause was argued before LE GRAND C. J., ECCLESTON and TUCK, J.

*Vivian Brent*, for the appellants, after remarking that it appeared by the charter of the Fremont Savings Institution, (act of 1853, ch. 227,) that the chief justice of the orphans court was one of its directors, insisted that the whole power of the court to order the money to be deposited, is derived under the act of 1831, ch. 315, the true construction of which requires the deposit or investment to be made in some *good security*. Here the investment was as *a loan* in a *new and untried* corporation, and is a violation of law and an excess of legal power and trust. 2 *H. & G.*, 120, *Thompson vs. Brodess*. 6 *H. & J.*, 67, *Scott vs. Burch*. Again, the refusal of the court to allow *time* for the proof of the allegations in the petition was a gross error. This is a proper case for an appeal, especially as the record shows that the court below have not acted on their legal discretion. 14 *East*, 397.

*William Schley*, for the motion to dismiss, insisted that the motion should prevail :—1st. Because the order determined no matter of right, and did not injuriously affect the interests of the appellants. The act of 1831, ch. 315, sec. 5, makes the money at all times subject to the order of the court when it is brought in. The party alone can appeal whose rights are *injuriously* affected by the order. Here the administra-

tors are not *aggrieved* by this order. 2nd. By the act of 1831, ch. 315, the jurisdiction of the orphans court in the matter of the petition of the appellants was exclusive, and the granting or refusal of the prayer was within their judicial discretion, and having exercised that discretion their decision cannot be reversed by this court, as no appeal will lie from it. On these points he cited, 2 *Gill*, 253, *Compton vs. Compton*. 5 *Gill*, 508, *Hebb vs. Hebb*. 3 *Md. Rep.*, 230, *Hanna vs. Munn.* *Do.* 462, 463, *Cain vs. Warford*. 3 *Md. Ch. Dec.*, 300.

Tuck, J., delivered the opinion of this court.

This appeal is taken from an order of the orphans court of Baltimore county.

It appears that in pursuance of the 4th sec. of the act of 1831, ch. 315, a sum of money, belonging to the estate of Charles Wood, on which the appellants had taken out letters of administration, was brought into court and deposited in the Fremont Savings Institution. Afterwards the appellants filed their petition, in which one of the sureties on the administrator's bond united, suggesting that this fund was unproductive, that the institution was not responsible, or solvent, and that there was great danger of the money being utterly lost to the estate; and praying that it might be paid back to the administrators. This petition was dismissed for reasons assigned in the order of the court.

The act of Assembly authorises the orphans courts "in their discretion, and whenever to them it shall seem proper, either *ex-officio*, or upon application, to order any executor or administrator, to bring into court, or place in bank, or invest in bank stock, or in any other good security, any money or funds received by such administrator or executor, and the court shall direct the manner and form in which such money or funds shall be placed in bank, or invested as aforesaid." The right of a party interested to make application to have the funds taken from the administrator, for safe keeping, cannot be questioned. It is equally clear, that when deposited or invested by order of the court, it is the duty of the court

to hear suggestions from those interested, for the purpose of having the money removed, if in danger of being lost to the estate, and this they may do *ex-officio*, without any such suggestion. But when the court has passed upon such application its decision is final, and no appeal will lie. The orphans courts, in these cases, are clothed with a discretion. This means a sound judicial exercise of the authority vested in them by the act of Assembly, with reference to the security of the fund; not an arbitrary or capricious decision. 4 *Gill*, 261. If, as suggested by the appellants' counsel, the court below acted in the present case without hearing evidence, if offered, or allowing time to them to produce their proofs, and this appeared by the record, we could not say that it had properly exercised the power conferred by law. It is the duty of courts to respect the rights of parties, and to protect their interests. This cannot always, if ever, be accomplished by deciding upon their personal knowledge of the circumstances of the case. In the case of *Rex vs. Justices of Kent*, 14 *East*, 395, which was a proceeding to compel an inferior jurisdiction to exercise a discretionary power, the court said, "if the justices had rejected the application, in the exercise of the discretion vested in them by the Legislature, this court would not interfere; but if they had rejected it on the ground stated, that they had no power to grant it, the court would interfere so far as to set the jurisdiction of the magistrates in motion, by directing them to hear and determine upon the application."—"They have a discretion to exercise, and therefore they must hear the application; but having heard it, it rests entirely with them to act or not upon it as they think fit."

We must presume, however, that the court has properly exercised its powers, until the contrary appears. The record does not show that it refused to hear evidence, or denied time to the appellants to collect their proofs. On the contrary the order of the court states, that no evidence whatever was furnished against the solvency of the institution.

*Appeal dismissed.*