UNITED STATES VETERANS' BUREAU *v.* RIDDLE.

4-2821

Opinion delivered February 27, 1933.

*Cleveland Cabler* and *Partlow & Rhine,* for appellant.

*Barber & Henry,* for appellee.

McHANEY, J. Appellees, Mrs. Esther Riddle and A. E. Randol, were the lawful guardians respectively of Eddie Becknell and Carroll Lee Gould, minor children of World War veterans, and each had on deposit, at 4 per

cent. interest, in the First National Bank of Rector, Arkansas, sums belonging to their respective wards in excess of the amount necessary for their support and education, Mrs. Riddle having $1,167.67 and Randol $1,925.02, when the bank became insolvent. These funds had come from the Federal Government by reason of the fact that they were dependent minor children of deceased World War veterans. Just when these guardians were appointed and qualified as such is not shown, except Mr. Randol testified he was appointed guardian in succession in January, 1926, and perhaps Mrs. Riddle was appointed prior thereto. Nor is it shown definitely just how long this money had been on deposit in said bank when it closed—date of closing not being shown, but probably in 1931. As early as June 15, 1928, appellant, through its attorney, began writing appellees, advising that it was their duty to invest said surplus funds in the manner provided by law, and not to permit them to remain in a bank on deposit. A number of letters passed between the parties, and, although appellee Randol had experienced a bank failure and consequent loss of funds in the Bank of Marmaduke, he continued to keep the money on hand in the First National at Rector. In a letter to appellant's attorney of August 27, 1929, in answer to one from it of the 15th, he said: "Now, as to loaning the money I have on hand, I can say if I have the money, you cannot hurt me. And as to the *if* of the bank failing why we can *if* on many things." The last letter of appellant to Randol was dated November 13, 1930. Although appellees consulted with the probate judge, no order was ever made authorizing these deposits to be made in said bank, nor was any other investment approved or rejected by order of the probate court.

After the failure of said bank, appellants filed separate petitions against each guardian, in the nature of exceptions to their annual settlements, in which it was sought to hold each personally liable for the loss sustained in said bank failure, to which responses were filed. The court denied the relief prayed, and, on appeal to the

circuit court, the cases were consolidated and tried by consent before the court sitting as a jury. Its findings and judgment were also adverse to appellant, and the case is here by appeal.

The court found, among other things, "that the said guardian did not make an investment as suggested by the said attorney for the reason that he was unable to find a safe and suitable investment for such funds. The court finds that he, as such guardian, acted in good faith and with due diligence with reference to investing the funds of said ward. That he consulted with and advised with the county and probate judge with reference to investing of such funds, and with the knowledge and consent and advice of the county judge loans were not made, Liberty bonds were not purchased, but that such funds were placed in the First National Bank of Rector on time deposit at 4 per cent. interest; that at such time said funds were so placed in said bank the bank was considered and thought to be a safe and solvent institution, and had such a reputation for safety and solvency up until the time that the same closed. That the said guardian was not negligent in the handling of said funds, and that he acted in good faith in an effort to safeguard the funds of the said ward."

Like findings were made in both cases, and were made upon testimony, admitted over objections by appellant, that the guardians had used due diligence to obtain investments, had consulted with the judge regarding certain proposed investments and had been advised by him not to make them. Conceding without deciding the competency of this testimony, we are of the opinion that it does not excuse the guardians from personal responsibility for loss of said funds. The records of the probate court fail to show any application of either guardian for authority to deposit said funds on time deposits or otherwise in said bank, or to make any other investment of said funds, and no order of court was ever made touching same. The statutes of this State are very plain regarding the duties of guardians to make investments of

the surplus funds of their wards and the kind or character of security to be taken. Section 5059, Crawford & Moses' Digest, provides that "such guardian shall, under the direction of the court, loan the same to such person as will give good security therefor, and such money shall be loaned on such time as the court shall direct." Section 5061 provides that the loan shall be "at the highest rate of interest prevailing in the community that can be obtained on unincumbered real estate security," not to exceed one-half the value. Section 5067 provides: "No guardian shall be personally responsible for any money belonging to his ward and loaned out by him, under the direction of the court, and no security. which may have been approved by the court, in case of the inability of the person to whom such money may have been loaned or his security to pay the same."

Under the latter section of the statute, this court held in *Parker* v. *Wilson*, 98 Ark. 553, 136 Ark. 981: "that where a guardian loans the ward's money without first obtaining an order of court authorizing him to make the loan, he assumes the responsibility, and no subsequent order of the probate court confirming his action will relieve him from liability if loss occurs." 7th syllabus. In the case cited the guardian testified that, sometime before making the loan he presented a petition to the judge for authority to make the loan, and that the judge indorsed thereon: "Examined and allowed," which was placed among the guardianship papers, but not delivered to the clerk, and no order was entered. This court held that a finding of the chancellor that no order was obtained would not be disturbed. In holding these provisions of the statute mandatory, including those above mentioned and others related thereto, the court in this case said: "While the language of the provisions under consideration is not as strong and positive as that in the section last referred to, we think that it should be construed to be mandatory. The money belongs to the ward, but he is not consulted, and has no voice in regard to the loaning out of his own money. The statute contemplates that it shall

be done under the direction and orders of the probate court. It is true the guardian may assume the responsibility and loan it out without an order of the court, but in such case he acts at his own peril. If he imprudently loans the ward's money upon inadequate security, without having first procured an order of the court to loan it, he must suffer the loss occasioned thereby, even though he may have acted honestly in the matter.''

The deposits made in this case appear to be time deposits at 4 per cent. interest. Whether a certificate of deposit was issued in either case is not shown, but apparently they were made for a definite time, and not subject to withdrawal, except upon some notice, but, whether so or not, they were time deposits and had been there for perhaps three years or more. They cannot be regarded other than as investments made by the guardians without security and without an order of the probate court, for which they are personally liable in case of loss. 28 C. J. 1145, § 244.

Nor does the decision of this court in *Harper* v. *Betts,* 177 Ark. 977, 8 S. W. (2d) 464, militate against this holding. There the executor had deposited the money in a bank only 18 days before it closed, and the holding in that case was bottomed on the shortness of time in which the money had been on deposit and the reputation of the bank.

Section 5065, Crawford & Moses' Digest, makes it the duty of the probate court to require guardians to make reports at every annual settlement of the disposition made by him of his ward's money, and § 5066 reads as follows: ''It shall be the duty of said court to carefully examine into such report as soon as made, and, if in its opinion the security is insufficient, it shall be the duty of the court to require additional security to be given to protect the interest of said ward, and, if such additional security be not given within such time as the court shall order, not exceeding ten days, it shall be the duty of the guardian or curator to institute suit forthwith on such security to recover the amount due thereon; and he and

his security shall be liable on the bond for any omission so to do; and, if such money has not been loaned out, the court shall order the money to be forthwith invested in United States bonds, for the use and benefit of such ward, and which shall remain so invested until said court shall order otherwise; and a report of the action of such guardian or curator shall be made of his proceedings.''

If the guardian fails to lend his ward's money after being ordered by the court to do so, he is liable not only for the money but the interest thereon at the legal rate. *Merritt* v. *Wallace,* 76 Ark. 217, 88 S. W. 876. In *Lee* v. *Beauchamp,* 175 Ark. 716, 300 S. W. 401, the guardian deposited the money in bank at 4 per cent. It was sought to charge him, not with the deposit, but a higher rate of interest than 4 per cent. This court declined to do so because the rate received was as high or higher than that on Government bonds.

Here, however, these guardians did not invest in real estate securities and did not purchase Government bonds. We think the evidence sufficiently establishes the fact that they could have done either with safety, at least with the protection of an order of the probate court. They permitted these funds to remain on deposit over the strenuous objections of appellant for about three years, at least from June, 1928, until the bank closed. This they had the right to do by making themselves and their bondsmen liable for the loss sustained, just as they could by making any other investment without the approving order of the probate court.

The judgment will be reversed, and the cause remanded with directions to enter a judgment against appellees for whatever loss has been sustained by reason of the failure of said First National Bank, with interest at 6 per cent. from the date of failure, and to certify same to the probate court for its guidance in the premises. Costs will be awarded against appellees.

SMITH and HUMPHREYS, JJ., dissent.