IRENE A. FAY, GUARDIAN, *v.* FREDERICK FAY
[No. 19, April Term, 1937.]

*Decided June 16th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Walter L. Clark,* with whom was *Roszel C. Thomsen* on the brief, for the appellant.

*Jacob A. Gross,* submitting on brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Irene A. Fay, guardian, under an appointment of the Orphans' Court of Baltimore City, of Frederick Fay and Woodrow Fay, her minor children, without having first obtained the consent of that court, deposited in the Baltimore Trust Company funds which her two wards would be entitled to receive as they severally reached their respective majorities. As a result of the failure of the Baltimore Trust Company, the amounts due its several depositors were not paid in full, but, in lieu of pay-

ment, certificates of deposits, for the balances respectively due them, were issued, one of which was issued for the balance due on the fund deposited for the use of Frederick Fay. When Frederick Fay reached his majority, his guardian filed a final account in which she craved allowance on that certificate of deposit, which stood in his name, for $282.52. Frederick Fay excepted to the account on the ground that, because the guardian had not obtained an order of the Orphans' Court authorizing the deposit before she made it, that she was not entitled to an allowance for the certificate of indebtedness, but that he was entitled to receive from her the amount thereof in cash. The court sustained the exceptions and directed the guardian to pay to Frederick Fay the amount due under the certificate of indebtedness in cash. The appeal is from that order.

It appeared that the Orphans' Court had repeatedly passed orders both before and after the deposit in this case was made authorizing fiduciaries to deposit funds in that bank, and that it had repeatedly authorized withdrawals from these particular funds, and was therefore cognizant of the fact that the deposit had been made.

The appellee contends that the deposits were made at the risk of the guardian, and that she personally is answerable to the beneficiary for the full amount thereof, for the reason, and only for the reason, that before making the deposits she failed to procure an order of the Orphans' Court authorizing her to make them. That proposition is based upon an extremely legalistic application of a purely ritualistic formula to the facts of the case, so as to impose liability, although it cannot be denied that, had application been made, the deposit would have been authorized and the loss would have resulted precisely as it did without such prior authorization. Such a conclusion is not required by any express statutory mandate, is contrary to the realities of the situation, and would relieve fiduciaries of the responsibility of exercising reasonable prudence and discretion in the administration of estates, at the expense of beneficiaries, for, if

depositaries can only be selected by the orphans' court, an administrator or guardian must be relieved from responsibility for making a deposit if he first secured the approval of the court, but he is responsible if he makes a deposit of estate funds without first securing such approval, even though in making it he exercised the utmost vigilance, care, and prudence.

That conclusion is said to be required by the construction placed upon chapter 315 of the Acts of 1831 (Code, art. 93, sec. 251) in *Bacon v. Howard,* 20 Md. 191. The statute provides: "The orphans' court may, in their discretion, and whenever it shall seem proper to them, either *ex officio* or upon application, order any administrator to whom they may have granted administration, or any guardian whom they may have appointed or whose bond they may have approved, to bring into court, or place in bank, or invest in bank or other incorporated stock, or any other good security, any money or funds received by such administrator or guardian; and the court shall direct the manner and form in which such money or funds shall be placed in bank or invested, and the same shall at all times be subject to the order and control of the court; and if the administrator or guardian shall not, within a reasonable time to be fixed by the court, comply with the order, his administration or guardianship may be revoked."

It is apparent, from an examination of its language, that by its own terms that statute is applicable only to a case where the court has ordered an administrator, or guardian, to bring into court money or funds of the estate. Its apparent purpose was to give the court the power to intervene when its attention was directed to circumstances which indicated that the security of an estate was being endangered by the conduct or the incompetence of the fiduciary. In *Bacon v. Howard, supra,* the court said: "From the earliest period of the testamentary system, it has been the sedulous purpose of the Legislature to hold persons standing in a representative position to a just accountability; while at the same time,

ample provision is made in that system for their official protection," and later, "whatever force this suggestion might have in the absence of positive legislation, we must determine that the Act of 1831, ch. 315, was intended to add a further safeguard to the due proper administration of personal estates, and to hold executors, administrators and guardians to such accountability in case of investment or deposit, so that no exercise of private judgment, though made in good faith, would relieve their official responsibility." It also stated that it would be in direct conflict with the spirit and intent of the testamentary law to deprive those interested in the administration of personal estates or the management of guardianships "of the safeguards provided for their protection." It then went on to say that to "allow an administrator to select for himself (without the sanction of the Orphans' Court) a depositary for the assets of an estate, and in case of loss, to claim an exemption or credit for the loss, though he may have acted in good faith, would be to substitute his private judgment for that of the orphans' court, and leave the parties interested, to the pecuniary ability of the depositary." Finally, it reached the conclusion that the intention of the act was to hold executors, administrators, and guardians to such accountability in case of deposit, so that no exercise of private judgment, though made in good faith, would relieve their official responsibility.

As construed by the appellee, that language means that good faith, prudence, and care on the part of such a fiduciary in selecting a depositary are wholly immaterial, but that the fiduciary may secure complete protection and immunity from responsibility by securing the approval of the orphans' court, because, in such a case, the judicial judgment of the court would be not only substituted for the "private judgment" of the fiduciary, but also for the protection of the bond, which is given, not to insure the faithful discharge by the court of its duties, but to secure the faithful performance by the fiduciary of his duties. That conclusion is contrary to the common law,

and, when the constitution of the orphans' court in this state is considered, it is apparent that no such forced construction of the statute is required or justified.

As pointed out above, under the terms of the statute, the power granted to the court by it to select a depositary does not arise until the court directs the fiduciary to bring into court funds of the estate. In this case no such direction was given, although the court's attention was repeatedly called to the fact that the moneys of the estate were deposited with the Baltimore Trust Company. Until it had ordered the fund to be brought into court under that statute, the court was under no duty, nor had it the power, to select a depositary. If it decided that the depositary was unsafe, its duty under the statute was first to require the fiduciary to bring the fund into court, and then to direct the "manner and form" in which it should be placed in bank.

But, apart from that, when the constitution of the orphans' courts of this state is considered, it is hard to believe that the Legislature ever intended to make their judgment an indispensable prerequisite to the valid selection of a depositary, or to transfer to them the duty of exercising care and prudence in making such a selection, which the law in the first instance places upon the fiduciary, or to deprive estates of the protection of bonds given to insure the faithful discharge of that duty. Its only apparent purpose was to give it the power, when a doubt arose as to the security of the funds of estates, to intervene, and, after a careful investigation, to select a depositary, but to leave undisturbed the general rule that a fiduciary must at all times exercise in the management of the estate the care, vigilance, and prudence which a person of ordinary care and prudence would be expected to exercise.

Judges of the orphans' court are not required to be trained in law or in finance, they need have no knowledge of securities or investments, or of the standing or safety of banks or other depositaries, nor have they the machinery to acquire such knowledge; they may be engaged in

industry, trade, agriculture or nothing at all. There is no reason to assume that they have any greater knowledge of the soundness and security of financial institutions because they are judges than they would have if they were not judges, which is merely that of the average man. Their terms are short, so that even the knowledge which might result from experience is often lost by their retirement as soon as it becomes useful.

Apart from the case of *Bacon v. Howard, supra,* no support for the rule announced seems to be found in the adjudicated cases of either America or England. In *Johnson v. Webster,* 168 Md. 568, 580, 179 A. 831, reference is made to that case, but the reference was interpolated merely by way of illustration, and the decision in *Bacon v. Howard* had no bearing on any question involved in *Johnson v. Webster.*

Cases supporting the rule that, in the absence of a statute requiring an administrator or guardian to secure an order of court authorizing him to deposit funds of the estate in a particular depositary, he is liable to the beneficiary, for loss resulting from the failure of the depositary, only in cases where he has failed to exercise the care, diligence and prudence which would be expected of a reasonably capable businessman under the circumstances, are collected in a note to 60 *A. L. R.* 484, at page 488. The annotator, after reviewing cases from nineteen American states, England and Canada, and after stating that the liability of an executor or administrator is that of an ordinary bailee for hire, says: "Accordingly, it is generally held that, with reference to funds coming into their hands, executors and administrators, as trustees, are bound to the observance of fidelity and such diligence as men of ordinary intelligence observe in managing affairs of their own; in other words, they must exercise that degree of care and prudence that ordinarily prudent men exercise in regard to their own affairs. If the executor or administrator, therefore, in good faith deposits funds of the estate to the credit of the estate in a reputable bank, selected by him with that degree of care which

the law exacts, he is ordinarily not liable for any loss which may occur through failure of the bank."

An examination of the statute appears to demonstrate that it has no application to such a case as this, and, if the construction placed upon it nearly seventy-five years ago in *Bacon v. Howard* was erroneous, this court is not required by any principle of *stare decisis* to make the error immortal.

The fallacy of the reasoning that the judgment of the court affords greater security than the "private" judgment of the fiduciary is demonstrated in this case by the fact that the very court from which this appeal is taken did, before and after this deposit was made, approve the particular bank in which it was made, as a depositary, so that its judgment and the private judgment of the guardian were identical. It is not apparent, therefore, that the case of a beneficiary is improved, or that he is left any the less to the pecuniary ability of the depositary, when it is selected by the orphans' court, than where it is selected by the fiduciary, except that the fiduciary is answerable for any failure to exercise reasonable care, prudence and diligence, while the court is not so answerable. *Roth v. Shupp*, 94 Md. 55, 60, 50 A. 430; 33 *C. J.* 981-983.

Nor does there seem to be any sound reason why fiduciaries answerable to an orphans' court should be held to any different measure or kind of responsibility in depositing funds entrusted to their custody than trustees of a court of chancery who are liable only for a failure to exercise reasonable care, diligence and prudence. While not strictly analogous, the case of *Zimmerman v. Coblentz*, 170 Md. 468, 185 A. 342, lends some support to that view. In that case a beneficiary under the will of Cephas M. Thomas sought to hold Newton A. Fulton and Emory L. Coblentz, executors, for the loss resulting from the failure of the Central Trust Company, in which they had deposited the fund claimed by the complainant in that case. The money had originally been deposited in the Walkersville Savings Bank, which in May, 1930, came

under the control and management of the Trust Company.

These questions arose in the case: One, whether Coblentz and Fulton held the fund as executors or as trustees, two, whether permitting the deposit to remain after the Savings Bank had become a part of the Trust Company was equivalent to a new or original deposit, and, three, if it was, whether the failure of the fiduciaries to secure the court's approval of the depositary made them liable for the loss, irrespective of whether they had, in selecting it, exercised reasonable care, prudence and diligence. The court held that Fulton and Coblentz did hold the fund as executors, 170 Md. 468, at page 474, 185 A. 342, 345; that: "The continuation of this deposit after it had been taken over by the trust company in 1930, although it is a truth often overlooked, amounted to a removal of the fund from the depositary authorized by the court, and involved a new set of risks" (*Ibid.*), but that Fulton, one of the executors, was not liable for the loss, although the court had passed no order authorizing the continuance of the deposit after the reorganization, because it declared that it would have authorized the deposit had it been asked to do so. It is true that, in that case, at the request of the executors, the Circuit Court for Frederick County in equity had assumed jurisdiction of the estate and that the executors had come under the control of that court, and that the court was dealing with what was a deposit in form but an investment in substance, but it is inconsistent with the reasoning of the opinion that executors holding funds as such must at all hazards obtain the approval of the orphans' court of a depositary before the chancery court assumed jurisdiction, but that after that they might select a depositary without the approval of any court, if they exercised reasonable care, prudence, and diligence in making the selection, and the selection was one which the court would have approved had its approval been requested prior to the deposit.

It undoubtedly did decide that, after the chancery

court assumed jurisdiction of the trusts created by the will, that the executors in making the deposit were only liable for a failure to exercise reasonable diligence, care, and prudence in selecting the depositary, but the reasoning which led to that conclusion would also support the conclusion that the same degree of care and diligence which would relieve an executor administering an estate under the direction of a court of chancery from liability for loss resulting from the failure of a depositary would also relieve him from such liability for a loss occurring under like circumstances while administering the estate in an orphans' court.

In *Woerner on The American Law of Administration, 1115,* the general rule is stated in this language: "It has already been mentioned, that where an executor or administrator deposits money in bank in his own name, he thereby makes himself responsible for all losses by the failure of the bank. Yet trust funds should not be kept in the administrator's house, unless the circumstances are such as to make it as safe there as anywhere. If deposited in a bank to the credit of the estate, for a reasonable time, not as a loan, but for safe keeping, he will not be liable for a subsequent loss occasioned by the failure of the bank, provided that at the time of the deposit it is in good reputation, and nothing occurs to indicate such weakness or insolvency as would induce a prudent person to withdraw the funds." The same author in *Woerner's American Law of Guardianship,* p. 206, says: "A guardian is not responsible for the loss of funds occurring by reason of the failure of a bank in which he had deposited the ward's funds, unless by the exercise of reasonable diligence and prudence he might have known it to be in an unsafe condition."

Cases such as *Carlysle v. Carlysle,* 10 Md. 440, which dealt with the investment of trust funds by a guardian, are not completely analogous to the mere deposit of funds for safekeeping, and are not therefore in conflict with the rule that where such a deposit is made the fiduciary, even though under the jurisdiction of an orphans' court,

is not responsible for the loss thereof resulting from the failure of the depositary, if in selecting it he exercised reasonable care, diligence, and prudence, and his private judgment was identical with that of the court.

The guardian was under a duty to deposit the money in bank. *Dalrymple v. Gamble,* 68 Md. 156, 167, 11 A. 718. Nevertheless the court in its discretion could have refused to select a depositary (*Ex parte Walsh,* 26 Md. 495, 498), so that its assent is not in all cases an indispensable prerequisite to a valid deposit, although it may be regarded as essential to a valid investment, for there is this distinction between a deposit, which ordinarily is a mere incident of custody, and an investment, which involves converting the assets of the estate into a different form.

Since there is no statute covering the case requiring any different conclusion, and since it appears that the judgment of the Orphans' Court and the "private" judgment of the guardian were identical, and it may be assumed from that fact that she did exercise reasonable care, prudence and diligence in selecting a depositary, the exceptions to the guardian's account should have been overruled, and the account ratified.

The order from which the appeal was taken will therefore be reversed, the exceptions overruled and the account ratified.

> *Order reversed, exceptions to the guardian's account of Irene A. Fay overruled, account ratified and confirmed, costs to be paid by the appellant.*

PARKE, J., filed a dissenting opinion as follows, in which Bond, C. J., and Johnson, J., concurred.

The decision on this record depends upon the effect to be given subsisting statutes of early legislative origin and judicial construction. By chapter 101 of the Acts of the General Assembly of 1798, an effort was made to amend and reduce into a harmonious system the laws and regulations concerning wills and the duties of executors, administrators, and guardians, and the rights of

orphans and other representatives of deceased persons. The only provisions of this enactment which related to funds which might remain in the hands of a personal representative for distribution were section 11 of subchapter 10 and section 13 of subchapter 11 (now Code, art. 93, secs. 5 [as amended] and 10, and sections 184 and 199; 157). The first section was with reference to money in the hands of an executor or administrator with the will annexed. If the will provided that any personal estate be retained, after all just claims are discharged, the court of chancery or orphans' court, on the application of the personal representative or of a party interested, was empowered to direct how the legacy or benefit intended should be secured for the person to be entitled, and how it should be prevented from lying dead or being unproductive. Section 11. The second section concerned guardians. It provided that a guardian should not be charged with interest on any balance of money in his hands unless he shall consent to take same on interest, but the orphans' court may direct him to place the same at interest, taking bond to the orphan, with security approved by the court (section 13). On the ward's arrival at age, the guardian was required to state a final account, and deliver to the ward all the property of the ward, and, if he default, his bond became liable. Section 15. The statute so continued in effect until the General Assembly of 1816 enlarged the jurisdiction of the orphans' court by the passage of two acts. The first is chapter 154, which, in authorizing the sale of the real estate of minors in certain cases, provided that the proceeds of sale should be paid by the trustees to the guardians of the infants, and be invested by the guardians "in such public stock or other permanent funds, as will at least net six per centum per annum at the time of the purchase" as the orphans' court should direct. See *In re Stone*, 2 Md. 292; Code, art. 93, secs. 178, 179 (modified as to rate of interest). The second act is chapter 203, which granted to the orphans' court "the authority to empower any guardian to sell any leasehold

estate of the ward, if the court should think the same advantageous to the minor, and to order the proceeds of such sale, or any surplus money belonging to said minor or orphan, to be invested in bank stock or any other good security, which investment shall be made in the name of the minor or orphan." Section 2. See Acts 1854, ch. 360.

The provisions of the Acts of 1816, ch. 154 (*supra*), in respect of the sale of real estate of minors, were extended by the Acts of 1819, ch. 144, sec. 2, to the personal estate of minors. Code, art 93, secs. 172-174. The first section of the Act of 1819 further declared that, in all cases in which the court of chancery, the county and the orphans' court were authorized to order an investment of funds, they were authorized to order and direct the same be loaned out on real or such other security as they may approve, provided that the chancellor or judges of the said court shall deem the same most advantageous for the interest of the parties.

All these provisions were grants of power to the orphans' court, whose jurisdiction was conferred and limited by statute, since its authority was subject to the restriction that the court should not, under pretext of incidental power or constructive authority, exercise any jurisdiction whatever not expressly given. Acts 1798, ch. 101, subch. 15 (20), Code, art. 93, sec. 271. With respect, therefore, to a residue of money in hand, the guardian, until the passage of the Acts of 1831, ch. 315, was responsible for this money and bound to keep it safe, and deliver it in specie to his ward at majority, unless he should consent to take the money at interest or the orphans' court should direct the guardian to place the money at interest on a bond to the infant, with security approved by the court; or the guardian should invest in the particular manner prescribed by the statutes cited, or, finally, the court should order the funds to be loaned on such real or such other security as the court might approve and find most advantageous for the interest of the parties concerned. *Supra*. If the guardian should not

take personally the residue of money at interest or invest it in one of the ways indicated, but should instead deposit the money in bank, but without the purpose of providing temporarily a place of safe-keeping pending its investment, and the bank should fail, the guardian and his bond, and not the ward, must bear the resultant loss. *Supra. Dorsey's Statutory Testamentary Law* (1838) ch. XXXV, pp. 113-123; *Fridge v. State* (1830) 3 G. & J. 103, 117, 118; *Seegar's Excrs. v. State* (1824) 6 H. & J. 162, 164-166; *Bowers' Admx. v. State* (1826) 7 H. & J. 32, 35, 36; *Tilly v. Tilly* (1830) 2 Bland, 436, 445.

It is to be observed that the subject matter of the statutes cited was the fund which remained in the hands of the guardian for investment for the benefit of the ward as contradistinguished from money to be forthwith distributed or paid out for current expenses and customary disbursement. It is obvious that, between the receipt of the fund and its investment, there would usually be an interval of time during which the guardian would be required to secure the money by the use of due care and diligence. With respect to this interval, whose duration would necessarily depend upon circumstances, the statutes did not prescribe any particular manner in which the guardian should keep the fund or the measure of the guardian's duty. This situation continued until the passage of the Acts of 1831, ch. 315, which concerned the duties of executors, administrators and guardians, and the rights of orphans and other representatives of decedents. By section 5 of the statute the orphans' court was empowered, in its discretion, to order any guardian to bring into court, or place in bank, or invest in bank or other incorporated stock, or in any other good security, any money or funds received by the guardian, "And the court shall direct the manner and form in which such money or funds shall be placed in bank or invested as aforesaid, and the same shall be at all times subject to the order and control of such court," and, if the guardian shall not within a reasonable time to be fixed by the court comply with its order, the guardianship may be

revoked by the court. The language of the statute was broad enough to permit any action by the orphans' court either on its own volition or on the application of the guardian or of any party in interest. Furthermore, the subject matter of the Act of 1831 was not only funds which awaited investment but also those which were to be safely kept to meet the costs and expenses of administration or to be shortly paid out or distributed, and, so, were not for investment. It follows that, after the Act of 1831, the guardian could deposit as guardian the funds of his ward temporarily for the purpose of payment and distribution or while awaiting investment. He could, also, invest the funds by a loan to the bank, which would assume the status of a debtor on receipt of the deposit and its promise to pay, with interest. If he made a temporary deposit or a loan to the bank, without the previous authorization or subsequent ratification of the orphans' court, the guardian became a guarantor of the deposit or the loan, and was liable for any loss which might arise by the failure of the depositary to pay the deposit (*Jenkins v. Walter* (1836) 8 G. & J. 218, 226; *Ex parte Shipley* (1853) 4 Md. 493, 496, 497; *Bacon v. Howard* (1863) 20 Md. 191, 193-195) or the loan. *Carlysle v. Carlysle*, 10 Md. 440, 447. If the deposit or loan be made pursuant to the authorization or later receive the ratification of the court, the guardian will not be liable for loss, except for subsequent neglect or want of due diligence. *O'Hara v. Shepherd* (1851) 3 Md. Ch. 306, 314-316; *Ex parte Shipley* (1853) 4 Md. 493, 496, 497; *Griffith v. Parks* (1870) 32 Md. 1, 6-9.

The *rationale* of this conclusion on the effect of the statutes is that, if the guardian fails either to have the court designate the depositary or to obtain the sanction of the court in his choice of a depositary for guardianship funds, this neglect of securing the safeguard of the court's judgment and direction by the guardian is sufficient to establish that he has not acted with the prudence and caution of a reasonably prudent and diligent guardian, and that thereby he has elected to undertake

the risks of loss incident to his assumption of sole responsibility for his action. *Wayman v. Jones*, 4 Md. Ch. 500, 507.

In a review of the statutes cited, this court declared in *Carlysle v. Carlysle* (1857) 10 Md. 440, at page 447: "These laws manifest a clear intention, on the part of the Legislature, to protect the property of a ward against the mismanagement of his guardian, by placing not only the sale of property, but also the disposition or investment of money, under the control and direction of the orphans' court. And these provisions afford the guardian ample and convenient means of securing himself from loss. If, therefore, he thinks proper to disregard them, and chooses to assume the responsibility of investing the money without the sanction of the court, he should be held answerable for any loss which may result from such an imprudent course."

In *Carlysle v. Carlysle, supra*, the guardian made an unauthorized investment of guardianship money on a mortgage note, but in *Bacon v. Howard* (1863) 20 Md. 191, a deposit in a banking house was made without any order or authority of the orphans' court, and the deposit was lost by the failure of the bank. This court there said:

"It would therefore be in direct conflict with the spirit and intent of the testamentary law, to deprive those interested in the due and proper administration of personal estates or the management of guardianships, of the safeguards provided for their protection. To allow an administrator to select for himself (without the sanction of the Orphans' Court) a depositary for the assets of an estate, and in case of loss, to claim an exemption or credit for the loss, though he may have acted in good faith, would be to substitute his private judgment for that of the Orphans' Court, and leave the parties interested, to the pecuniary ability of the party with whom the fund is deposited, and not to the security of the administrator's bond and the power of revocation conferred on the Court in case of failure to comply with its orders.

"The point presented by the appellants' counsel, 'that

when a trustee or executor has used good faith in the exercise of a fair discretion in the same manner as he would ordinarily do in regard to his own property, he ought not to be held responsible,' has received the careful consideration of this court.

.''Whatever force this suggestion might have in the absence of positive legislation, we must determine that the Act of 1831, ch. 315, was intended to add a further safeguard to the due and proper administration of personal estates, and to hold executors, administrators and guardians to such accountability in case of investment or deposit, so that no exercise of private judgment, though made in good faith, would relieve their official responsibility.

"The 237th section of the 93d Article of the Code, makes no distinction between administrators and guardians. This section is an exact transcript of the Act of 1831, ch. 315, and in the case of *Carlysle v. Carlysle*, 10 Md. 440, this Court gave such a construction to the Act of 1831, as to leave no doubt of the responsibility of the appellants in this case. See, also, *O'Hara v. Shepherd*, 3 Md. Ch. 306.''

The point at bar was thus expressly involved and determined, and the statute law which was then involved and construed is the statute law now, in force. Code, art. 93, sec. 251. The statute of 1831 was neither expressly nor impliedly repealed by the Acts of 1906, ch. 270 (Code, art. 93, sec. 40). The two enactments are not in conflict. The Act of 1906 did not empower the guardian to select a depositary independently of an order of the orphans' court, but merely authorized a guardian or other fiduciary to agree with his surety for all the moneys and other assets of the estate for which he is or may be responsible to be deposited with a bank, safe deposit, or trust company and in such manner as to prevent the withdrawal or alienation of such money or assets without the written consent of the surety or on an order of court, after notice to the surety. The legislation was necessary because, before its passage, a beneficiary could

not enter into such a contract, as it was against public policy and beyond the power of a fiduciary thus to surrender control of the personal assets. The effect of the legislation is to relieve the guardian, under the circumstances given in the statute, of liability for loss on the sole ground of the limitation of his control of the deposit. *In re Ounjuian's Estate,* 4 Cal. (2nd) 659, 52 P. (2nd) 220, as reported and annotated in 102 *A. L. R.* 1106, 1111, 1112; *In re Wood's Estate,* 159 Cal. 466, 114 P. 992, 36 L. R. A. (N. S.) 252.

Since the passage of the Act of 1831 (Code, art. 93, sec. 251) and its construction by our predecessors, who, when they decided the appeals of *Carlysle v. Carlysle, supra,* and *Bacon v. Howard, supra,* were not so remote from the period of the enactment, the statutory rule in Maryland has been that a deposit of a ward's funds in bank, without the previous order or subsequent ratification of the orphans' court, was at the guardian's risk in the event of a loss occasioned by the subsequent failure of the bank. So far as the writer is advised, the rule thus stated has been enforced in practice, and accepted by professional opinion and recognized by the court. *Mayer's Digested Cases of Maryland Statutes* (1866), pp. 674-676, 682-683; *Hinkley on Testamentary Law* (1878) sec. 1609; *Bagby on Executors and Admrs.* (1922-1927) sec. 66; *Phelps' Juridical Equity,* sec. 123, citing *Bacon v. Howard, supra.* See *Johnson v. Webster,* 168 Md. 568, 580, 179 A. 831; *Oesterla v. Gaither,* 90 Md. 40, 44-46, 44 A. 1035; *Ex parte Walsh,* 26 Md. 495, 497, 498; *Jenkins v. Walter,* 8 G. & J. 218, 226. The construction here given the case of *Bacon v. Howard, supra,* has been accepted by careful annotators in 44 *L. R. A.* (*N. S.*) 877; 44 *L. R. A.* (*N. S.*) 944; 45 *L. R. A.* (*N. S.*) 8; 60 *A. L. R.* 500, 501; *Ann Cas.* 1915 C, 51, 52, note.

The statement quoted in the majority opinion from *Woerner on the American Law of Guardianship,* at page 206, that "A guardian is not responsible for the loss of funds occurring by reason of the failure of a bank in which he had deposited the ward's funds, unless by the

exercise of reasonable diligence and prudence he might have known it to be in an unsafe condition," is correct, if read with the necessary reservations. One is that the deposit should disclose that it is made by the guardian for the use and benefit of the ward, and so cannot be made as his personal deposit. *Jenkins v. Walter*, 8 G. & J. 218. Another is that the deposit must be temporary in its nature, and not as an investment (*Baer's Appeal*, 127 Pa. 360, 18 A. 1; *In re Hazelbaker's Estate*, 113 Pa. Super. 32, 171 A. 619), and a third is, obviously, that such a deposit must conform to any statute on the subject. (*Andrew v. Farmers Sav. Bank*, 207 Iowa, 394, 223 N. W. 249, 250; *Garner v. Hendry*, 95 Iowa, 44, 63 N. W. 359; *Parker v. Wilson*, 98 Ark. 553, 136 S. W. 981, 985, 986; *In re O'Brien's Estate*, 80 Neb. 125, 113 N. W. 1001, 1002; *Gray v. Fox*, 1 N. J. Eq. 259. *Id.* secs. 62, 63, 66, 67, pp. 209, 210, 218; *Woerner on Administration* (3rd Ed.) sec. 336, pp. 1107, 1108, 1112, 1115; *Restatement, Trusts*, vol. 1, secs. 179, 180-185 (c).

Not only was the deposit not made pursuant to an order of the Orphans' Court as contemplated by the statute, but it was not for a temporary purpose. The amount of money was $537.57. It was not subject to any charges except the payment of the premium on the guardian's bond and the costs and expenses of administration. While the amount was small, the account of the guardian shows that the income from its investment would have met these costs and expenses. As there were no current charges to be met, except the premium on the bond, and as the infant would not become of age until October 5th, 1936, the duty of the guardian was to invest so that she might secure the fund for the use of the ward. Upon her own judgment, she put the whole amount in the trust company in the name of the minor and subject to the joint order of herself as guardian and of the surety on her guardian bond. The deposit was a special one, which bore interest at three per cent. annually, payable by entry of credit on book of interest accruing on April 1 and October 1 of every year. The deposit was subject

to withdrawal by the joint check of the guardian and her surety.

From the date of its deposit on May 12th, 1931, until the bank holiday beginning on February 24th, 1933, no withdrawals were made except $5 in payment of the premium and a withdrawal of $75 in October, 1931, and of $50 in June, 1932, for the support and maintenance of the ward. The two later withdrawals in 1933 of $21 and $42.33 and the dividend of $75.34 paid in 1934 by the bank were all used for the support and maintenance of the ward. The final account of the guardian, which was stated on November 10th, 1936, shows the balance of the deposit to be in the form of a certificate of indebtedness of the Baltimore Trust Company to the ward for $282.52. Obviously the deposit was a permanent one, and not placed on deposit for any temporary purpose or to be withdrawn for another investment. *In re Hazelbaker's Estate,* 113 Pa. Super. 32, 171 A. 619; *Woerner, Amer. Law of Administration* (3rd Ed.) 1108, 1115.

So, no matter how treated, the loss must be borne by the guardian who, not having availed herself of the protection afforded by an order of court, must bear the loss rather than the infant, whose incapacity and tender years are to be protected as a primary duty of chancery. *Supra,* and *Zimmerman v. Fraley,* 70 Md. 561, 567, 568, 17 A. 560.

It was urged in argument and on brief that the decision in *Zimmerman v. Coblentz,* 170 Md. 468, 185 A. 342, is in conflict with the earlier decisions. Admittedly, the controlling facts of that case are different from those at bar. In the former case, the administration of the trust created by the will of a testator had been removed from the orphans' court, and full and complete supervision and jurisdiction had been assumed by chancery. In pursuance of its powers, the court of equity passed an order authorizing the executors to deposit the fund in their hands in a savings bank at a specified rate of interest and subject to the further order of the court. The deposit so remained when the assets of the savings bank were

bought, and its liabilities assumed, by a trust company. The executors failed to secure an order from the court for their continuation of the deposit in the savings department of the trust company, and on appeal it was held that their failure was not such a breach of trust as to require the executors to make restitution of the fund when lost by the failure of the company, because, although it was the duty of the executors to decline to accept the trust company as their depositary without an order of court, the circuit court would have authorized the acceptance of the new depositary at the time of the change, as appeared by the declaration of those judges in their opinion in the case. *McCrory v. Beeler*, 155 Md. 456, 461, 142 A. 587; *Johnson v. Webster*, 168 Md. 568, 575, 179 A. 831; *Reeside v. Peter*, 35 Md. 220, 221.

It is to be observed, first, the trust in *Zimmerman v. Coblentz, supra*, was administered in a court of equity, either under the special authority of section 10 of article 93, or under the general powers of courts of equity in the state over trusts. Code, art. 16, sec. 99; *Barnes v. Crain*, 8 Gill, 391, 397; *Swan v. Dent*, 2 Md. Ch. 111, 117; *Davis v. Clabaugh*, 30 Md. 508; *Keplinger v. Maccubbin*, 58 Md. 203, 212; *Wright v. Williams*, 93 Md. 66, 69, 48 A. 397. In the supervision of the trust, the court of equity was acting in the exercise of its own ample powers. *Green v. Creighton*, 23 How. 90, 106, 16 L. Ed. 419; and see *Johnson v. Webster*, 168 Md. 568, 179 A. 831. Its jurisdiction was not limited by section 251 of article 93 (Acts 1831, ch. 315) and other statutory provisions applicable to the orphans' court and within whose limitations the latter court must find and exercise its powers. The distinction is that the liability of the executors for their conduct, after equity had assumed jurisdiction, is ascertained and measured by general equitable principles, while the liability of the guardian in the pending appeal is ascertained and measured with reference to a compliance with a standard of conduct prescribed by a statutory provision whose operation is confined to the orphans' court. In the second place, the judges in equity declared

that the executors should not be liable, on equitable principles, because the judges would have authorized the acceptance of the substitution of the trust company (the second depositary) for the savings bank (the first depositary). The judges of the Orphans' Court in the instant case, however, did not declare they would have sanctioned the deposit and so exonerated the guardian, but held the guardian liable because he had not obtained an order approving the deposit, as was contemplated by the statute.

It follows the case at bar differs from the *Zimmerman v. Coblentz, supra,* case not only on the controlling facts but also in the jurisdiction of the two courts.

Two other questions remain for consideration because of the position taken by this dissent. On the assumption that the court would adhere, as it is submitted it should, to its former decisions, the guardian contends that the subsequent passage of four orders by the Orphans' Court, directing that the depositary pay to the guardian and mother of the infant, out of the fund shown by the pass book containing the deposit account, small sums of money for the use and benefit of the minor, is a ratification by the court of the deposit with the trust company, which dispenses with the necessity for an order. The Orphans' Court rejected this contention. In its opinion the court stated the reasons for its rejection in these words: "In the instant case, when the orders for the allowances were passed, the only thing to which the judicial mind was directed was the propriety of authorizing the withdrawals—not whether it should approve the depositary." The parents of the ward were primarily responsible for the support and maintenance of their child. So, in order that the interest and a part of the principal of the trust fund might be applied to the support and maintenance of the child, it was necessary for the court to authorize the use. Code, art. 93, sec. 170 (as amended by Acts 1931, ch. 438). *In re Wilmer,* 137 Md. 29, 31, 111 A. 118. The question of withdrawal was, therefore, necessarily involved in the orders passed, but the ratification

of the action of the guardian in making the deposit was not so involved.

The guardian and her bond were liable and responsible for the fund, without the safeguard of the court's protective judgment, so there was no necessity for the court voluntarily to investigate and ascertain as a fact whether the deposit of the funds of the ward was under an order of court. Again, there was nothing, on the face of the order passed, to negative the existence of an order of court authorizing the deposit; and there is no evidence on the record at bar that the failure of the guardian to obtain the order was brought to the attention of the court at the time the several orders of withdrawal were considered and passed. While courts of record may take cognizance of all former orders passed in a matter depending before them, there is no principle of law that the court must take judicial cognizance of those orders which have, or have not, been formerly passed in the matter. The rule that a court will take official notice of the existence or nonexistence of orders of court does not mean that to the court is imputed a knowledge of every document, order, or proceedings in every matter in which the court had acted and so of those which did not exist. The court is not even fictionally omniscient and is only obliged to know its former proceedings when, at the appropriate time, such proceedings are produced, or their nonexistence is shown, or the procedure or steps of the record is brought to the court's attention or is otherwise formally presented to the court. *Wigmore on Evidence,* (2nd Ed) secs. 2568, 2579; *Line v. Line,* 119 Md. 403, 407, 408, 86 A. 1032; *Snyder v. Hartford etc. Co.,* 214 Iowa, 1055, 243 N. W. 343. There is no reason to infer that the mind of the court was directed at all to the sanctioning of the choice of a depositary when the court passed the interlocutory orders for the part withdrawal of funds. Accordingly, the record here fails to establish clearly an express or implied approval of the deposit, and so there is no ratification shown.

Of the other point made by the guardian it may be

said that it is true that there are decisions holding that, where an investment is made by a trustee without the previous authorization of the court but is one which the court would have authorized if application had been previously made, the court will not hold the trustee liable for a later loss which has occurred without the subsequent negligence of the trustee as its cause. These decisions are supported by the equitable maxim that equity looks upon that as done which ought to have been done. *Gray v. Lynch,* 8 Gill, 403; *Johnson v. Webster,* 168 Md. 568, 575, 179 A. 831; *Carey v. Safe Deposit & Trust Co.,* 168 Md. 501, 518, 178 A. 242; but see *Wayman v. Jones,* 4 Md. Ch. 500; *Zimmerman v. Fraley,* 70 Md. 561, 17 A. 560; in 44 *L. R. A.* (N. S.) 946; 88 A. L. R. 329-336.

For the application of this rule of exoneration, when it is invoked for the relief of a trustee who has committed a breach of trust in failing to ask, and obtain, the judgment and authority of the court in the matter of the custody or investment of trust funds, it is requisite that the trustee shall clearly show that he acted honestly and reasonably and that the court would have approved his act, if timely requested. If he fail in this measure of proof, he fails to convince the court he ought to be excused for the loss. So, the burden is on the fiduciary to produce clear and definite testimony that the court would have authorized the deposit or investment, if the trustee or guardian had made a seasonable application for the required order. If the fiduciary cannot do this, he ought not to be excused. *Supra.*

While a guardian is a fiduciary, his duties in Maryland differ from a trustee, in that he is governed by section 251 of article 93 of the Code, *supra,* and the trustee is not. So, in the case of a guardian, it has been held that oral directions, which were given by the orphans' court to the guardian, but which were not a matter of record, were not sufficient to protect a guardian from a loss occurring as a result of an investment made pursuant to those oral directions. *Carlysle v. Carlysle,* 10 Md. 440; *Scott v. Fox,* 14 Md. 388; *Redman v. Chance,* 32 Md. 42;

*United States Veterans' Bureau v. Riddle,* 186 Ark. 1071, 57 S. W. (2d) 826; *Parker v. Wilson,* 98 Ark. 553, 136 S. W. 981, 985, 986; *McIntyre v. People,* 103 Ill. 142; *In re O'Brien's Estate,* 80 Neb. 125, 113 N. W. 1001, 1002; *Kilby v. Burnham,* 65 N. D. 169, 256 N. W. 522, citing *Carlysle v. Carlysle, supra.* See 88 *A. L. R.* 329, 336.

If, as thus held, it is inadmissible to show that a guardian invested money of his ward in accordance with the oral instructions previously given by the members of the court, it is difficult to see how an unexpressed willingness to confirm it may be inferred from parol testimony of that intention. If, however, no distinction is to be observed under the Maryland law between a trustee and a guardian, there is, it is submitted, no legally sufficient evidence that the court would have authorized the deposit by the guardian in the trust company.

The guardian offered testimony of six instances, during the period 1930-1933, of the trust company having been named by the Orphans' Court as a depositary for funds in the hands of guardians and administrators. These deposits had no connection with the fund here involved. While they show what was done by the Orphans' Court in six particular instances, and the court's satisfaction with the depositary in every one of these particular instances, they do not tend to show an authorization for the deposit in controversy. It may be conjectured that what the court authorized in the six instances given would have been done, at the time, if the guardian in this case had applied. But, as stated by an eminent author: "Equity does not regard and treat as done what might be done, or what could be done, but only what ought to be done." *Pomeroy's Eq. Juris.* (4th Ed.) secs. 364, 365; *Phelps' Jurid. Eq.* sec. 214, pp. 299, 300; *Story's Eq. Juris.* (14th Ed.) sec. 81. The evidence thus offered is of record, but it fails to show what ought to have been done in the deposit at bar.

The circumstances of the six deposits, their terms, whether with or without interest, and when or how payable, are not found in the record, so they afford no sound

basis for comparison and the deposits are *res inter alios acta*. The orders at most but tend to show a satisfaction of the court with the depositary in the particular instances given, but they do not show authority for the deposit in the instant case.

No statute exists, nor is there any suggestion of a rule of court, which names the trust company as an approved depositary for this and other similar funds. *Baltimore City v. Thomas*, 115 Md. 212, 213, 214, 80 A. 726. The judgment of the court is, also, to be exercised in every instance under the particular circumstances of the case. The Orphans' Court did not originally authorize the deposit, and later refused to sanction it when this present cause was submitted to it for determination, so this tribunal cannot on appeal say this refusal is error, because the record does not sufficiently advise the court of the facts and circumstances which existed at the time the deposit was made. Without these facts and circumstances, and unless they had plainly shown that the Orphans' Court ought to have approved the deposit as made and continued, there could be no basis for this court to consider the exoneration of the guardian.